195 So. 554

**EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. WELCH.**

**2 Div. 123.**

Supreme Court of Alabama.

April 18, 1940.

455

Mallory, Mallory, Reeves & Stewart, of Selma, and Steiner, Crum & Weil, of Montgomery, for appellant.

Pettus & Fuller and Theodore L. Wade, all of Selma, for appellee.

THOMAS, Justice.

This is a suit on a life insurance policy. The complaint is in Code form. In addition it acknowledges a credit on the policy of $711 paid on February 1, 1936. Defendant (appellant) pleads the fact that pursuant to written request of the insured received at appellant's home office in New York, it caused its check for the full amount of the cash-surrender value, including all dividends due on the policy, to be paid to the insured on February 1, 1936, so that the policy ceased to be in force and effect on and after said date of February 1, 1936.

The appellee by replications averred that at the time the insured requested the surrender of the policy for its cash-surrender value, and at the time he cashed the check in payment of the same, he not only "did not have sufficient capacity to understand in a reasonable manner the nature and effect of the transactions," but also that "the defendant's agent, one Brown in charge of said business for the defendant, knew of the lack of a right capacity on the part of D. Scott Welch, the insured, or knew of facts which would put the said agent on inquiry, which if followed up would have led to knowledge of such lack of mental capacity of said D. Scott Welch." Appellant's demurrers to the replications were overruled by the trial court. These rulings of the court were assigned as error.

Appellant, the Equitable Life Assurance Society of the United States, then filed a general rejoinder and "denied each and every allegation in the replication."

The essential averments in the complaint and pleas are undisputed. The real issue in the case is whether or not the insured, D. Scott Welch, lacked sufficient mental capacity to understand in a reasonable manner the nature and effect of. his transactions in requesting and receiving the full cash-surrender value of the policy, and if he did lack such capacity, then whether or not the defendant's agent, S. C. Brown, either knew of such alleged lack of capacity or knew of facts which should have put him on inquiry which, if followed up, would have led to knowledge of such lack of capacity.

The plaintiff's evidence shows that the insured was operated on in Selma for a cancer of the neck in September, 1935, and December, 1935; that he took X-ray treatments for the condition in Birmingham in October, 1935, December, 1935, and February, 1936. The insured was a railroad engineer, left his work in September, 1935, and did not return thereto. The plaintiff's evidence shows that on January 11, 1936, the insured called at defendant's office in Birmingham, requested the surrender of his policy of defendant's agent Brown, and the insured's conversation with Brown lasted about thirty to forty-five minutes. This was the only time Mr. Brown ever saw the insured. Any knowledge which Mr. Brown had, or should have had, concerning the alleged mental incapacity of the insured had to have been ascertained from this conversation.

What was the insured's mental capacity on January 11, 1936, when he talked with defendant's said agent, and what knowledge did that agent have of any alleged mental incapacity on the part of the insured at the time? What fact was known to him that should have put him on inquiry which, if followed up, in due course would have led to his knowledge of the alleged mental incapacity of the insured affecting the surrender of said policy of insurance?

The plaintiff's evidence tends to show that the insured was in extreme pain. after taking the X-ray treatments, referred to above, and that drugs and opiates were given him from time to time to relieve the pain. The evidence further tends to show that at the times he was under the influence of such drugs and opiates, he was nervous and excitable and, at times, not himself. Only one witness for the plaintiff, Mr. Madden, testified, over defendant's objection and due exception, that the insured was insane at the time in question.

Some of the defendant's evidence tends to show that the insured showed no lack of mental capacity to friends who knew him and observed him frequently. On this issue, the testimony is in conflict as to the

mental condition and capacity of the insured at times during the period when he was first taken sick in September, 1935, until the time of his death in July, 1936. The plaintiff's agent and witness Brown was the only witness at the trial who saw the insured on January 11, 1936; no other witness testified as to the physical or mental condition of the insured on the date in question. There is no other evidence as to Mr. Welch's mental condition or capacity on January 11, 1936, the date of his transaction in Birmingham with defendant. The undisputed testimony of Brown is that Welch was apparently normal and rational and in the full possession of his faculties at that time,—during his conversation and transaction with defendant's agent

The evidence is undisputed that the policy was taken out by the insured in connection with a mortgage loan procured by him from the defendant on his home in Selma; that the mortgage was paid up on January 11, 1936, and that the defendant delivered the cancelled mortgage and other relative papers to the insured on January 11, 1936.

The appellant contends that there was not a scintilla of evidence that the defendant's agent Brown had any knowledge of the alleged mental incapacity of the insured, or of any fact which, if followed up, would have led to knowledge of the alleged mental incapacity of assured. The defendant requested the general affirmative charge, and the refusal of this charge is made the basis of assignment of error.

The jury returned a verdict in favor of the plaintiff in the sum of $2,750. Defendant duly filed its motion to have the verdict set aside and a new trial granted.

■ We have examined the several objections and exceptions during the examination of the plaintiff's witness M. E. Madden and find no reversible error, as the examination was within the rule. The rule that obtains is as follows:

To authorize a non-expert witness to give his opinion of the existence of an unsound condition of mind, he must not only have had the opportunity to form a judgment, but the facts must be stated upon which it is based. Burney v. Torrey, 100 Ala. 157, 172, 14 So. 685, 46 Am.St.Rep. 33; Dominick v. Randolph, 124 Ala. 557, 27 So. 481; Parrish v. State, 139 Ala. 16, 18, 36 So. 1012; Braham v. State, 143 Ala. 28, 38 So. 919; Jones v. State, 181 Ala.

63, 61 So. 434; Bachelor v. State, 216 Ala. 356, 113 So. 67; Sorter v. Austen, 221 Ala. 481, 129 So. 51.

■ The objection of plaintiff to the question to Dr. Bradford was properly sustained. We note the insistence of defendant as follows: that this evidence was not only competent but highly material; that the court's ruling in excluding the evidence was prejudicial, for the defendant had taken the deposition of both Dr. Meadows and Dr. Kesmodel, and was relying on their testimony. These physicians were not residents of Selma (the place of the trial) and were not known to the jurors. Each of these physicians was properly qualified as an expert in the interrogatories propounded. It is insisted that it was competent and material to the defendant that the jury know their qualifications as medical experts in the use of deep therapy treatment and in their knowledge of the treatment of cancer and its effect upon the human mind and body; that evidence which tended to give weight to the opinions of these expert witnesses was admissible. In this ruling of the court there was no error. The proposed questions were to strengthen evidence without the rules. Wesson v. State, 238 Ala. 399, 191 So. 249. The right purpose was accomplished on the qualification of these expert witnesses in the inquiry directed to the court. 22 Corpus Juris, p. 518, § 605, and p. 648; 22 C.J. p. 736, § 826; American Jurisprudence & Evidence, § 809. This question was settled by the early decisions of this court. Washington v. Cole, 6 Ala. 212; De Phue v. State, 44 Ala. 32; Tullis v. Kidd, 12 Ala. 648; Rash v. State, 61 Ala 89; Gulf City Ins. Co. v. Stephens, 51 Ala. 121; Louisville & N. R. Co. v. Elliott, 166 Ala. 419, 52 So. 28; N. Y. Life Ins. Co. v. Torrance, 26 Ala.App. 38, 153 So. 458; Inland, etc. Coasting Co. v. Tolson, 139 U.S. 551, 11 S.Ct. 653, 35 L.Ed. 270.

To the same effect are the cases of Burnwell Coal Co. v. Setzer, 191 Ala. 398, 67 So. 604; Wear v. Wear, 200 Ala. 345, 76 So. 111; Brown v. Mobile Electric Co., 207 Ala. 61, 91 So. 802.

■ There was no error in declining to allow the witness Brown to answer such questions as those calling for replies based on his personal handling "of such matters" and "cancellation of insurance policies for their cash surrender value rather than continuing them in force," and what "percentage of such borrowers of your company

in the State of Alabama" cancel life insurance policies for their cash value. These questions called for answers that fall within the rule of res inter alios acta. It is insisted that this was the presenting of facts which put the agent on notice or that should have reasonably stirred him to inquiry which if followed up would have lead to a discovery of the true facts of assured's mental status, as being incompetent, within the rules, to transact the business in hand.

In order to impute knowledge and stir to inquiry, it must be unnatural, unusual, or suspicious conduct and motive as judged by a reasonable person experienced in such matters, or that of ordinary observation if of that character, otherwise there is no supporting fact and no notice is imputed and no inquiry is required.

In Hodges Brothers v. Coleman & Carroll, 76 Ala. 103, 113, Chief Justice Stone said: "Notice, to be sufficient, need not always be actual. On the contrary, it is sufficient if it be constructive, or if it be shown that the party sought to be charged had knowledge of suggestive facts, which, if followed up, would have led to a discovery of the fraud. To come within the clause last expressed, the known fact or facts must be of unusual or suspicious nature, must have reference to the transaction sought to be impeached, and must so relate to it as that, if faithfully pursued and inquired into, they will lead to a knowledge of the fraud committed. * * *"

This is on the idea that the means of knowledge is the equivalent of knowledge. Gill v. More et al., 200 Ala. 511, 76 So. 453; Dewyer v. Dover et al., 222 Ala. 543, 133 So. 581.

To constitute imputed notice, in the absence of statute, it is not enough that a party be put on inquiry, but the facts brought to his knowledge must be sufficient to produce reasonable conviction that such inquiry, if followed up, would lead to knowledge of the fact. Houston v. Town of Waverly, 225 Ala. 98, 142 So. 80; Mobile & Montgomery Ry. Co. v. Felrath, 67 Ala. 189; Tompkins v. Henderson & Co., 83 Ala. 391, 3 So. 774.

The record recites:

"The defendant then asked the witness the following question:

" 'Mr. Brown was there anything unusual or extraordinary in a borrower wishing or requesting to surrender his life insurance policy for its cash value after he had paid off his mortgage loan rather than continuing it in force?' " This was competent evidence.

"The plaintiff objected to the question on the ground that it was incompetent, immaterial, irrelevant and impertinent and the Court sustained the objection to which ruling of the court the defendant duly and legally reserved an exception.

"The defendant then asked the witness the following question:

" 'Mr. Brown, was there anything in such a request as would put you on notice or lead you to believe that there was anything wrong with that person's mental capacity?'

"The plaintiff objected to the question on the ground that it was incompetent, immaterial, irrelevant and impertinent and the Court sustained the objection to which ruling of the Court the defendant duly and legally reserved an exception."

A jury question was thus presented.

Having considered the questions presented on the introduction of the testimony, we are brought to the refusal of defendant's request in writing for the general affirmative charge, which is made the basis of the fourteenth assignment of error.

In this connection it is necessary that we advert to several well-established rules of this court touching the matter for decision.

The law presumes every person sane and casts the burden of establishing insanity on the one asserting it. Stanfill v. Johnson, 159 Ala. 546, 49 So. 223; Johnston v. Johnston, 174 Ala. 220, 57 So. 450; Vaughn v. Vaughn, 217 Ala. 364, 116 So. 427; American Bank & Trust Co. v. Benton, 230 Ala. 563, 161 So. 803.

Proof of insanity, or mental incapacity, at intervals or of a temporary character creates no presumption that it continued up to the time of the transaction, and the burden is upon the attacking party to show insanity at the very time of the transaction. McDaniel v. Mellen, 223 Ala. 181, 134 So. 873; Pritchard v. Fowler, 171 Ala. 662, 55 So. 147; Johnston v. Fondren, 204 Ala. 656, 87 So. 94; Lewis v. Davis, 198 Ala. 81, 73 So. 419; Harris v. Bowles, 208 Ala. 545, 94 So. 757.

Proof of failing health does not charge a defendant with notice that such a person with whom he deals in a busi-

ness transaction is mentally incompetent, but on the contrary, where the evidence shows that such person was transacting his business in the usual and ordinary way, and there was nothing about his conduct to impress upon those coming in contact with him that his mind was impaired, then such proof fails to show any notice chargeable to the defendant of such mental incapacity. · Hughes v. Bullen, 209, Ala. 134, 95 So. 379; Hughes v. Dempsey, 209 Ala. 375, 96 So. 435; McDaniel v. Mellen, supra.

■ With this understanding of the rules touching insanity, we should observe, that when a party places a witness on the stand, he thereby vouches for his credibility, and may not impeach his own witness. Peterson v. State, 227 Ala. 361, 150 So. 156; Louisville & N. R. R. Co. v. Scott, 232 Ala. 284, 167 So. 572.

■ It is further urged as an established rule of evidence that where the positive, uncontradicted testimony of an unimpeached witness, consistent with the facts actually proven, rebuts a fact resting solely on inference, an inference contrary to this testimony is not permissible. Central of Ga. Ry. v. Chambers, 194 Ala. 152, 69 So. 518; Pennsylvania R. R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819.

■ The foregoing observation is rested on the decisions to the effect that one fact cannot be inferred from another fact which is itself an inference, since an inference cannot be "grounded on an inference." Gadsden General Hospital v. Bishop, 209 Ala. 272, 96 So. 145; Williams v. Wilson, 210 Ala. 289, 97 So. 911; Atlantic Coast Line R. R. Co. v. ·Cooper Lumber Co., 219 Ala. 484, 122 So. 661; Goslin-Birmingham Mfg. Co. v. Gantt, 222 Ala. 321, 131 So. 905; Rowe v. Alabama Power Co., 232 Ala. 257, 167 So. 324.

■ When the testimony of the defendant's witness Brown and that of the several witnesses looking toward the insanity of the assured Welch is considered, the inference was drawn in the first instance (from the fact of observation and conduct of Brown with Welch) on the only occasion of the contact of the two parties; and if from such conduct, conversation and observation of physical defect, the fact of cancer is to be inferred with its attendant circumstances of treatment and alleviation, then in the undisputed evidence of the absence of actual knowledge on the part of Brown of Welch's mental condition, his insanity, to be inferred, must be rested on an inference. This is contrary to the well-established rules of this jurisdiction.

The authorities as to notice and when there is a duty to inquire are collected in Girard Fire & Marine Ins. Co. v. Gunn, 221 Ala. 654, 130 So. 180.

In Gill v. More et al., 200 Ala. 511, 76 So. 453, 462, it is said: "It is unnecessary to multiply authorities to support the rule that the means of knowledge is the equivalent of knowledge (Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807; Gamble v. Black Warrior Coal Co., 172 Ala. 669, 55 So. 190; Veitch v. Woodward Iron Co., [200 Ala. 358] 76 So. 124), and that this rule has application when the circumstances of the case impose the duty of a reasonable inquiry, and even where it is not required by the express mandate of the statute (Bank v. Baker, 82 Cal. 114, 22 P. 1037, 6 L.R.A. 833)."

When the evidence of Brown is considered there was no duty imposed upon him for the delay of inquiry and for his declining to take the payment of the loan and mortgage or the application for the surrender value of the policy that' was collateral security for the mortgage and note secured thereby. If, however, he had inquired of the doctors and physicians treating Welch, he would not have been informed of a mental incapacity that disqualified him to act as he did on the day of the payment of the loan and the surrender of his policy for its cash value.

It results that the defendant was entitled to the affirmative instruction, which was requested in writing in refused charge 13. In the court's failure to give the affirmative charge at defendant's request, there was reversible error.

The judgment of the lower court is reversed and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and BROWN and FOSTER, JJ., concur.