6 So.2d 11

### WOODWARD IRON CO. et al. v. GOOLSBY.
#### 6 Div. 838.

Supreme Court of Alabama.
Jan. 15, 1942.

Rehearing Denied Feb. 19, 1942.

B. J. Dryer, of Birmingham, for appellant.

Ross, Ross & Ross, of Bessemer, for appellee.

if well pleaded would be admissible in defense or in reply to such defensive matter to have effect as if so pleaded. The case was submitted by the court to the jury on both counts of the complaint and the jury returned a verdict against both defendants. for damages in the sum of six thousand dollars.

■ When the plaintiff averred that "while his said intestate on said date was walking across the said defendant's railroad track along a road" in count one and averred that "while his said intestate on said date was walking across the said defendant's said railroad track along a public road" in count two, he assumed the burden of proving that his intestate was actually crossing the track. This will not be presumed and until plaintiff has met this burden the duty of the defendant to acquit itself of negligence does not apply. Of this in Meeks v. Southern Ry. Co. et al., 239 Ala. 587, 196 So. 102, 103, it is declared:

"In the third count is the averment that said 'intestate was lawfully crossing said railroad at a public street crossing when he received his fatal injuries.' It was necessary that plaintiff adduce proof of such statement, having assumed that burden by the express terms of the pleading. It will not be presumed that plaintiff's intestate was 'lawfully crossing the railroad' at that public street crossing. Elliott v. Northern Alabama R. Co., 222 Ala. 79, 130 So. 775. * * *"

■ The declaration of decedent before setting out on his journey from the car from which he alighted as to how and where he was going is admissible as a part of the res gestae. This has been the long settled rule in this jurisdiction.

In Kilgore v. Stanley, 90 Ala. 523, 8 So. 130, 131, Chief Justice Stone said: "What a person says on setting out on a journey, or to go to a particular place, explanatory of the object he has in view in so setting out, is res gestæ evidence, and may be proven; and the jury may give it such weight as they think it entitled to. Pitts v. Burroughs, 6 Ala. 733; Olds v. Powell, 7 Ala. 652 [42 Am.Dec. 605]; Autauga County v. Davis, 32 Ala. 703; 1 Greenl. Ev. § 108."

See 113 A.L.R. 274, 275, 288 and 299 citing many authorities from this and other jurisdictions.

THOMAS, Justice.

The appeal is from a judgment under the homicide act, Code 1940, Tit. 7, § 123, by H. R. Goolsby, as administrator of the estate of Lloyd Goolsby, deceased, against Woodward Iron Company, a corporation, and Otis E. Lyons, alias Red Lyons, claiming damages for the alleged wrongful death of said Lloyd Goolsby as a result of his being struck by a railroad locomotive belonging to said Woodward Iron Company and at the time being operated by said Lyons as engineer, employed by said Woodward Iron Company, and while said Lloyd Goolsby, as averred, was "walking across" the railroad track "along a road" or "along a public road" on November 24, 1939. The complaint was in two counts.

Demurrers of the defendants to the complaint were overruled as to both counts of the complaint and the pleas were in short by consent the general issue with leave to give in evidence any matter which

■ The trial court denied such question sought to be propounded by defendant. In this ruling there was error. Central of Georgia Railway Company v. Bell, 187 Ala. 541, 65 So. 835. We have carefully examined the record and notwithstanding this ruling, the witness answered and hence the ruling of the trial court was without injury. The record recites the fact of answer as follows:

" * * * That is Mr. Moore's house and I lived with him. I had a conversation with Goolsby at this point.

"Q. Do you recall what the conversation was?

"Mr. Ross. We object to that.

"A. No, sir.

"Mr. Ross. One minute, Mr. Raney.

"The Court. I will sustain the objection.

"Mr. Dryer. We except.

"(Witness continuing): It must have been pretty close to two o'clock when I stopped there. I didn't stay there any length of time, not more than a minute. Then he said *he was going home. He got out of the car and went up the track; started on down the track. He was between the middle of the track, going on up towards No. 3. Dolomite when I last saw him.* I did not see him any more after that." [Italics supplied.]

■ There were material conflicts in the evidence as to how the intestate was going home or where the plaintiff's intestate was stricken on the railroad tracks. Hence no error was committed by the trial court in declining the affirmative charge requested by defendant. McMillan v. Aiken, 205 Ala. 35, 88 So. 135; Sloss-Sheffield Steel & Iron Co. v. Willingham, 240 Ala. 294, 199 So. 28; Sloss-Sheffield Steel & Iron Co. v. Peinhardt, 240 Ala. 207, 199 So. 33.

■ The lower court recognizes in many given charges that as a matter of law the appellee cannot recover unless he has met the burden of proving (1) that his intestate was actually hit by the engine at the crossing, (2) that said intestate, if struck at the crossing, was not walking along the track and overtaken by the locomotive, and (3) that the intestate was struck while walking *along the road across the crossing.* It is well established in this jurisdiction that a trespasser on a railroad track, walking down the track to a public or neighborhood crossing, is not entitled

to the protection or care required of a railroad as to persons using that crossing in the usual or customary way. It is an important question of fact whether plaintiff's intestate *was crossing the railroad track in due course,* as alleged in both counts of the complaint, or merely walking that track as a trespasser until he reached and went beyond the railroad crossing. If in his due procedure along the public thoroughfare intestate arrived at and went on the crossing of the railroad track, the duty of defendant as to such member of the public, having the right and authority to use the road crossing, such as it was, is well established by the decisions and by the prescriptions of the statute. If he was only walking the railroad track to and across the railroad crossing in question as a trespasser, the defendant owed him no duty to keep a lookout for such trespasser, until his presence was discovered by the trainmen on duty at the time and place, and thereafter it was defendants' duty not to wilfully or wantonly injure him as a trespasser. Louisville & Nashville R. R. Co. v. Porter, 196 Ala. 17, 71 So. 334; Id., 202 Ala. 139, 79 So. 605.

■ It is insisted by defendant that this was not a public road crossing within the statute. As to this our Court has held in the recent case of Southern Railway Co. v. Holder, 230 Ala. 500, 161 So. 513, involving a crossing accident, that where a crossing is merely for the purpose of serving the public in the neighborhood, the crossing was not a public crossing and that Section 9952 of the Code of 1923, Code 1940, Tit. 48, § 170, was inapplicable. The court, speaking through the now Chief Justice Gardner, observed:

"Plaintiff's car and contents were destroyed in the night by collision at a road crossing with the defendant's passenger train, and, from a judgment for plaintiff, defendant appeals.

"The crossing was not a public road crossing, and the provisions of section 9952, Code 1923, were therefore inapplicable. Walker v. Alabama, Tenn. & Northern Ry. Co., 194 Ala. 360, 70 So. 125, 127.

"But the crossing, though not a public one, did serve the public of that neighborhood, and the defendant held out an invitation to the public to cross at this particular place by preparing and maintaining the same for public convenience, and the proof shows it was so used. The defendant, therefore, assumed in the operation of

334

its trains, without regard to the statute, 'the burden of exercising reasonable precautions to protect the public when using it on such inducement or invitation; the degree of care to be measured, not by the absolute requirements of the statute, but by the potentialities and probabilities of the situation thus created.' Walker v. Alabama, Tenn. & Northern Ry. Co., supra; 52 Corpus Juris, 232."

See, also, the case of Empire Coal Company v. Martin, 190 Ala. 169, 67 So. 435.

■ There are divergent tendencies in the evidence as to the nature and character of the road, whether public or private and the frequency of travel thereupon, that crossed defendants' track in the locus in quo of the injury, and so of the exact point where plaintiff's intestate was stricken. We need not detail the evidence on these material questions of fact. As to such feature of the case, the appellants had not the burden of going forward with the evidence or by sufficient proof to show a discharge of duties placed upon them by § 9955 of the Code of 1923, Code 1940, Tit. 48, § 173, and as to the maintaining of lights and keeping a due lookout and the giving of the required crossing signals and warnings.

Salient facts may be stated that from Apex it is 1,875 feet in a westerly direction along defendants' railroad track to the crossing where plaintiff insists Goolsby was struck, and about 450 or 500 feet from the crossing to where the deceased was lying beside the railroad track. From Apex to the crossing where Goolsby was struck the railroad track forms an "S" curve. It is down grade from Apex to this crossing and the grade runs from one to five per cent. There is an embankment on both sides of the railroad track from the crossing east towards Apex and this embankment is 25 feet high in the highest place in it, and it feathers out to nothing at the crossing. There is a railroad crossing sign at this crossing, and was at the time of the collision. They put a new one up there about five or six years ago.

At Apex, on the night of the collision, the train was cut off from the locomotive alone and started backing down the spur track leading from Apex to Dolomite No. 3. The headlight was on the back of the tender or tank of the said locomotive, which was lighted. The engineer testified that he blew for the said crossing about half way between Apex and the crossing; that the bell was ringing all the way from Apex to said crossing; that he (the engineer) was on the left side of the engine as it approached the crossing and on the outside of the curve. He could not see the crossing before he got near to it. The tank or tender of the locomotive was directly in front of his eyes, and he could not see unless he stuck his head out of the window, which he says he did; that the locomotive was making about 15 miles per hour as it crossed over the crossing. There was no one riding on the back end of the tender as it approached and passed over said crossing. The two switchmen were on the front end of the engine. The engineer blew his whistle in the first part of the "S" curve. The engineer testified his vision of the crossing was obstructed until within 200 feet of the crossing and the fireman, when the locomotive was within 200 feet of the crossing, was looking out of the window, but did not have his head out of the window, and the fireman could not see the crossing unless he had his head stuck out of the window. In this there was presented conflicting tendencies in the evidence.

The fireman testified if he saw down the track on said occasion, he would have to put his head out of the window. The fireman testified that he saw the crossing when he was within 200 feet of the crossing without sticking his head out of the window of the cab. The engineer testified that the fireman could not see the crossing without sticking his head out of the window within 200 feet of it, and the fireman also testified to like effect. The said crossing is on a curve and the engine headlight is thrown angling from the track. The engineer testified that the headlight was burning on the back end of the engine and with that headlight he could see around 350 and 450 feet and that the light shone down the center of the track. The witness Harold Early testified that the light on the tender was burning but it was not as bright as the one on the front end and that from the light on the tender one could not see very far; that one could see around 100 feet; that it was a cold and foggy night. The engineer had been operating locomotives over this crossing for 18 years, four times each shift, and he had never seen anybody at night on that crossing.

The locomotive and tender weighed 200 tons. About 500 feet beyond the crossing in question the engineer testified he felt a

jar in back of the tank; and the fireman testified that he felt something hit that locomotive and tender; that the engineer saw an object roll off the track and began to slow down and ran 264 feet and made a service stop. The engineer testified that he could have stopped the locomotive in 50 feet with a service stop and could have stopped the locomotive in 5 or 10 feet with an emergency stop at such speed it was running on the occasion complained of.

The witnesses Raney and Moore testified that the deceased got in an automobile with them on the night of his death near Cottage Hill about a mile or mile and a half south of Apex and came on up to the cross roads, one of which leads to No. 3 Mine, but that Goolsby did not get out of the car at that point at the cross roads.

The witness Raney testified that there was not any conversation with the deceased at the cross roads, a mile from Apex, as to whether or not he would get out of the car. Also that he stopped the automobile about the spur track and the witness lived about 100 feet from the track on the other side. The deceased got out of the car and started walking down the track between the middle of the track, going up towards No. 3 Dolomite, when Raney last saw him; that as soon as deceased got out of the car the automobile pulled off and down the embankment and over to where the witness lived. After the deceased got out of the car, he would have to come back and cross the Mulga Road and go on over to the track, about 15 feet, and this witness testified he looked back and saw deceased walking down the track.

The witness Moore testified the deceased got out of the car and talked a little while and then started up the No. 3 track and after the automobile pulled off the road and in his drive and up to his house he got out and then saw the deceased going up the track walking in the direction of No. 3 Mine; that when Goolsby got out of the car Goolsby was about 30 or 40 feet from the Dolomite No. 3 track and walked ahead of the automobile to the railroad track, and the automobile pulled right on behind him and that there was no fill or bank there and that the moon was shining that night unusually bright and you could see anybody off a long ways; didn't know about any fog; that when his car was about half way home he *looked back and saw Goolsby going down that railroad track.* The witness Moore further testified he saw the train that night; that it came up about a minute or two after Goolsby left there and after he crossed and came before he got through locking up his car, and he told the jury he was out there locking the car and that he saw Goolsby going down that No. 3 track and the train was switching around there for two or three minutes before it started down the spur track to No. 3 and the lights of the engine were changed when the engine was on the switch going to No. 3 Mine, and the light on the tender was burning when the engine went up the spur track and proceeded in the direction in which intestate was walking.

As we have indicated the pertinent authorities were recently collected in John Hulsey v. Illinois Central R. R. Co., Ala. Sup., 5 So.2d 403,[1] and Johnson v. Louisville & N. R. Co., 240 Ala. 219, 198 So. 350; and Pennsylvania R. R. Co. v. Chamberlain, 288 U.S. 333, 335, 53 S.Ct. 391, 77 L.Ed. 819, against resting an inference upon an inference. It is further well established that where there is direct testimony of a fact consistent with other proven facts, that is uncontradicted, an inference to the contrary cannot be indulged. Equitable Life Assur. Soc. of United States v. Welch, 239 Ala. 453, 195 So. 554; Johnson v. Louisville & N. R. R. Co., supra; Pennsylvania R. R. Co. v. Chamberlain, supra.

Applying the well-fixed rules of law to the facts in evidence, we find: (1) That in the absence of any direct testimony to the contrary there was evidence in regard to blood spots at the crossing which amounted to a scintilla from which the jury could infer that the man was struck at the crossing. To the contrary there is the direct testimony of the fireman Shaddix that he could see the whole crossing for more than 200 feet as the engine approached it, as he was on the side of the engine which was on the inside of the curve; that he was looking at the crossing as the engine approached it and saw no one at the crossing.

This testimony that there was no one at the crossing is uncontradicted and is consistent with the other proven facts, (1) that the man when he alighted from the car said he was going home and was last seen when he started walking down the track in the direction of his home; (2)

that he had stated he was going home, was walking along the railroad track from Apex, or in the direction to his home at or near No. 3 slope, which way was his shortest route; (3) that there was no convenient way he could have been traveling at the crossing without getting further away from home and out of the deep railroad cut; (4) that the trainmen sensed the fact that some object had been struck at a point about 400 or 500 feet west of the crossing and in the direction in which intestate was walking when last seen, and (5) that at that point the trainmen saw him roll from the track and found him injured.

■ (2) If we assume that Goolsby was struck at the crossing and was not a trespasser, then the inference must be indulged that this man left the tracks after leaving Apex and did not continue down the track, and upon this inference an inference must be reached that he climbed the embankment along the right of way and went on the road north of the crossing and thence directed his course south across the road crossing in question, going toward Parkins' house, and which was not in the direction of his home, but where he could have had no occasion for going at 2 A. M.; or that he may have gone to a point on the road south of the crossing and directed his course north to the crossing, whereas his home was due west from and down the railroad track in the direction he was proceeding from the automobile. In the absence of evidence to the contrary, the law presumes that a man will do the reasonable thing rather than the unreasonable. It was the reasonable thing for this man to continue along the track, and not the reasonable thing for him to leave the track and go out of his way over a high embankment to the road only to come back to the instant crossing. If he did this, it was not across the track and down the road in a reasonable to believe that he would go direction that would take him further from home. Either of the latter would be to believe that *the man would do the useless, vain and nonsensical thing, rather than the reasonable thing* in going home at that time of the night.

Thus is presented a clear case for the application of the principle that inference upon inference runs to conjecture. Equitable Life Assur. Soc. of United States v. Welch, 239 Ala. 453, 195 So. 554, 559, supra.

■ The two rules of law stated above are given expression in Equitable Life Assur. Soc. of United States v. Welch, supra, as follows:

"It is further urged as an established rule of evidence that where the positive, uncontradicted testimony of an unimpeached witness, consistent with the facts actually proven, rebuts a fact resting solely on inference, an inference contrary to this testimony is not permissible. * * *

"The foregoing observation is rested on the decisions to the effect that one fact cannot be inferred from another fact which is itself an inference, since an inference cannot be 'grounded on an inference.' * * *"

■ In the case of Pennsylvania R. R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 393, 77 L.Ed. 819, which is also the rule in Alabama, we find the following observation: " 'There being several inferences deducible from the facts which appear, and equally consistent with all those facts, the plaintiff has not maintained the proposition upon which alone he would be entitled to recover. There is strictly no evidence to warrant a jury in finding that the loss was occasioned by negligence and not by theft. When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof. A verdict in favor of the party bound to maintain one of those propositions against the other is necessarily wrong.' * * *"

■ One of ordinary intelligence, where not subject to drink, drugs, passion or prejudice, on comprehending a sudden emergency, is presumed to do or say the natural thing, that any other reasonable man so endowed and circumstanced would do or say. The intestate when last seen was going home by the nearest and most accessible way as a trespasser along the defendants' railroad track. There being no evidence to the contrary, this court cannot infer that he departed therefrom or changed his status as a trespasser to and on a more inaccessible way to the public road and to have proceeded thereon as a traveler on the public highway to the railroad crossing and to the point where he was struck.

■ When the great preponderance of the evidence is considered, it is shown that the intestate was a trespasser on the railroad tracks and not a traveler over and

along the railroad crossing when he was struck and injured.

The new trial should have been granted.

It results that the judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

GARDNER, C. J., BROWN and FOSTER, JJ., concur.