The defendant was indicted and convicted for assault with intent to rob Kenneth *Page 1114 
Bragg. Alabama Code Section 13-1-46 (1975). Initially convicted at his first trial, the defendant's motion for a new trial was granted. The cause was again tried and a second verdict of guilty was returned. Sentence was fixed at twelve years' imprisonment.
 I
The primary issue raised on appeal is whether there was sufficient corroboration of the testimony of Henry Mayes, and admitted accomplice, to support the conviction of the defendant.
Mayes testified that he, Billy Chumbley, and the defendant met with Wayne Chapman and discussed the robbery of Kenneth Bragg in Thomaston, Georgia, sometime in late April or early May of 1975. This meeting was arranged by the defendant.
A short time later another meeting was arranged with Chapman; this time at the Crystal in Columbus, Georgia. From there the four men drove to a location directly behind Bragg's home outside Phenix City, Alabama. Mayes, Chumbley, and the defendant got out of the automobile and walked to a place from which they observed Bragg's home which Chapman had previously described to them. After completing additional reconnaissance of the various locations where Bragg might be located and discovering the type of automobile he drove, Mayes, Chumbley, and the defendant returned to Atlanta and apparently had no further contact with Chapman.
On May 4, 1975, Mayes, Chumbley, and the defendant returned to Columbus and checked into a motel. After some difficulty, they located Bragg's house sometime during that night.
On the morning of May 5th, the three were at a truck stop owned by Bragg and watched him arrive for breakfast.
After failing to locate the house of a friend whom Bragg was dating, they decided to rob Bragg at his home. In the parking lot of Howard Brothers' in Phenix City they stole a dark green late model Mercury automobile and then hid Chumbley's vehicle which they had been using.
The trio drove to Bragg's house. They were disguised as policemen. Mayes had on a baseball cap. They all "had guns visible and also handcuffs were visible" in their belts. Mayes observed Bragg's neighbor, Bob Raines, cutting grass and had to move the stolen Mercury in order to let Mrs. Raines out of her driveway.
Deciding it was "risky to use the stolen car any further" they disposed of it. Once again they returned and hid Chumbley's automobile nearby in some trees near Bragg's home. Then under cover of darkness, they walked to Bragg's home.
Although originally planning to spend the night outside Bragg's home, the cold and their hunger compelled them to leave, seek food at a store in Phenix City, and sleep in Chumbley's automobile.
Between four and five on the morning of May 6, 1975, the trio once again returned to Bragg's home. Each man was masked and armed with a pistol. Inside or in a shack just outside the garage they waited for Bragg to leave for work. When Bragg appeared, Mayes told him to "hold it; that it was a robbery". Bragg, himself armed with a pistol, fired twice before Mayes could use his weapon. Then they "stood and emptied our guns at each other".
His pistol empty, Mayes was the first one out of the garage. The three would-be robbers fled the scene, returned to Chumbley's car, and departed, ultimately returning to Atlanta.
Excluding the testimony of accomplice Mayes, the State subtly corroborated his testimony and spun a web of guilt around the accused.
On May 5, 1975, a dark green 1971 Mercury automobile was stolen from the parking lot of Howard Brothers' in Phenix City. On November 11, 1975, the car was discovered by an Alabama State Trooper in a hidden and wooded site near Bragg's house.
On the afternoon of May 5, 1979, Bob Raines was cutting his grass when he noticed three men in a dark green late model Mercury park at the end of a driveway in *Page 1115 
Mr. Bragg's yard. All three men got out and "started walking and looking around the area". He and his wife took the men for law enforcement officers because of the handcuffs they wore on their belts. Mr. Raines also noted that they wore baseball caps. Mrs. Raines testified that a couple of them had on baseball caps.
Mrs. Raines had to ask the men to move the Mercury so that she could get out of her circular driveway and go to the store. She identified Mayes as the man who moved the Mercury. Both Mr. and Mrs. Raines positively identified the defendant as being one of the three men.
Mr. Bragg gave a similar description of the attempted robbery as that given by Mayes. The three men were masked and, although he only saw them for an instant, he testified that one of the trio was the same size as the defendant.
The defense was alibi, but the defendant also submitted the testimony of Billy D. Chumbley who took an active part in the attempted robbery. Chumbley's testimony was essentially identical to Mayes up to the events of May 4, 1975. He agreed that the defendant had been present and participated in two meetings with Chapman when the robbery was planned. However Chumbley contended that they called off the plan when they discovered that Chapman was an ex-policeman and that later he, Mayes, and another individual, whom Mayes had recruited, decided to continue the plan without involving the defendant. Chumbley stated that the defendant was not with them on the 4th, 5th, and 6th of May 1975, and did not participate in the actual robbery attempt.
While there is a significant amount of additional evidence to corroborate Mayes' account of how the crime occurred and his truthfulness in general, the above facts constitute the corroborating evidence tending to connect the defendant with the charged crime.
At the outset it must be noted that the defendant did not specifically raise the issue of the sufficiency of the corroboration of the testimony of the accomplice at any time prior to appeal.
 "The three usual methods to present the law question of lack of corroboration to the trial court is by (1) a written or oral motion to exclude the state's evidence, or (2) by a written request for the affirmative charge, or (3) by a timely filed and presented motion for a new trial asserting the lack of corroboration as a ground of the motion. Leonard v. State, 43 Ala. App. 454, 192 So.2d 461.
 "When none of the above methods is invoked, the trial court has not been presented with an opportunity to rule on this question of law, and therefore cannot be cast in error under the circumstances." Alexander v. State, 281 Ala. 457, 458, 204 So.2d 488, 489 (1967).
The defendant filed no motion for new trial upon this conviction. The record contains no written or oral request for the affirmative charge. The trial court did not charge the jury on the issues of accomplices and corroboration and the defendant announced "satisfied" to the oral charge as given. The oral motion to exclude the State's evidence did not specifically raise the question of the lack of corroboration. The defendant moved to exclude the evidence "on the grounds that the State has not made out its case or carried the burden of proof". Consequently, under the objections raised by the defendant, the question of corroboration was simply not in issue.
Whether there is an accomplice witness and whether he has or has not been corroborated must first be put to the trial judge.Clayborne v. State, 49 Ala. App. 35, 268 So.2d 501 (1972). The trial court must be apprised of the basis for the objection with sufficient particularity to allow an informed decision to be made on the legal issue involved. United States v.Greenfield, 554 F.2d 179 (5th Cir. 1977).
Specific objections or motions are generally necessary before the ruling of the trial judge is subject to review, unless the ground is so obvious that the trial court's failure to act constitutes prejudicial error. Slinker v. State, 344 So.2d 1264
(Ala.Cr.App. *Page 1116 
1977). If only a general objection is interposed, or only general grounds are assigned in support of the objection, no error results in overruling the objection unless the evidence is illegal for any purpose and cannot be made legal by other evidence, or by supplying additional evidence. Moates v. State,40 Ala. App. 234, 115 So.2d 277, cert. denied, 115 So.2d 282
(1959). This same rule holds true for a motion to exclude the State's evidence. It is settled that a motion to exclude without stating any grounds therefor is properly overruled.Turner v. State, 266 Ala. 250, 96 So.2d 303 (1957); Freeman v.State, 350 So.2d 768 (Ala.Cr.App. 1977); Gross v. State,56 Ala. App. 387, 321 So.2d 727, cert. denied, 295 Ala. 403,321 So.2d 729 (1975).
Nevertheless, in the exercise of an abundance of caution, we have carefully examined the evidence and found that the testimony of the accomplice was corroborated. Both parties recognize that this issue is governed by the rule stated inKimmons v. State, 343 So.2d 542, 547 (Ala.Cr.App. 1977).
 "(T)he fact that at or about the time of the commission of the offense with which the accused is charged, he and the accomplice were together, in or near the place where the crime was committed, may, in conjunction with other facts and circumstances, sufficiently tend to connect the accused with the commission of the crime to furnish the necessary corroboration of the accomplice. * * * Additional facts and circumstances, however slight, must be adduced to support the testimony of the accomplice in addition to or in conjunction with those of proximity, chronologically and graphically, to the alleged offense in the association of an accomplice. In conjunction with the facts of proximity and association, those additional facts and circumstances may consist of . . .; suspicious conduct of the accused . . .; . . . and the testimony of the accused which tends to corroborate that of the accomplice . . ."
While the general rule is that the testimony of an accomplice cannot be corroborated by the testimony of another accomplice,Knowles v. State, 44 Ala. App. 163, 204 So.2d 506 (1967), the necessary corroboration of the State's accomplice witness may be supplied by the testimony of an accomplice witness who is called by and testifies for the defendant. See Robinson v.State, 40 Ala. App. 74, 108 So.2d 376 (1958), where the court noted that "the testimony of the two accomplices was corroborated in many respects by the testimony of the appellant, and his witness Harris" who was an accomplice.
This proposition stands to reason when it is considered (1) that the accomplice was called by the defendant as his own witness, C. Gamble, McElroy's Alabama Evidence, § 171.01 (1) (3rd ed. 1977), and (2) that the usual rule is that, when a party places a witness on the stand, he thereby vouches for his credibility, and cannot impeach his own witness. Equitable LifeAssur. Soc. of U.S. v. Welch, 239 Ala. 453, 195 So. 554 (1940).
In Andrews v. State, 370 So.2d 320, 321 (Ala.Cr.App.), cert. denied, 370 So.2d 323 (Ala. 1979), we set forth the rules governing the sufficiency of corroborating evidence. We apply those rules to this case.
The defendant's presence and actions at Bragg's house approximately twelve hours before the attempted robbery tend to connect him to the charged crime. He was on private property walking and looking around the area, in a stolen automobile, wearing a disguise (the handcuffs on his belt), and was in the presence of two admitted accomplices. Special significance must be attached to the specific circumstances of the defendant's appearance at that particular location. This case is distinguishable from Lindhorst v. State, 346 So.2d 11
(Ala.Cr.App.), cert. denied, 346 So.2d 18 (Ala. 1977), upon the facts.
In Arrington v. State, 24 Ala. App. 233, 133 So. 592 (1931), it was held that evidence that the defendant was at a still on the evening before his accomplices were found *Page 1117 
thereat was sufficient to corroborate their testimony that the still belonged to the defendant. The remarks of the court in that case have application here.
 "The corroborative evidence tending to connect the defendant is to be found in the fact that the defendant was seen at the still on Thursday evening looking into one of the vats containing the beer designed to be used in distilling whisky. The still was three-quarters of a mile from defendant's house, in a wood. What was his business there? Was it to ascertain if the beer was ready for distillation? Did he find it so and instruct Frazier and Thorn to go there Friday morning to aid in manufacturing the whisky? The fact of defendant's being at the still, while not sufficient to convict, was a circumstance tending to corroborate the testimony of the witnesses Frazier and Thorn."
Arrington, 24 Ala. App. at 234, 133 So. at 593.
The circumstances we have noted, coupled with the admission of the defendant's own witness that the defendant actually participated in the planning of the robbery, were sufficient evidence to corroborate the testimony of the State's witness.
 II
The defendant vigorously contends that he was improperly limited on seventeen occasions in his cross examination of the State's witnesses. We have carefully examined each and every alleged restriction and conclude that the trial court did not infringe on the defendant's right to a full and fair cross examination of any witness for the same reasons we expressed inAtwell v. State, 354 So.2d 30, 39 (Ala.Cr.App. 1977), cert. denied, 354 So.2d 39 (Ala. 1978), and Davis v. State,352 So.2d 3, 6-7 (Ala.Cr.App.), cert. denied, 352 So.2d 8 (Ala. 1977).
 III
The defendant specifically objected to a question asked by the State to one of its witnesses on direct examination which was in rebuttal of prior testimony given by defense witness Chumbley. The objection was, "We object, he is leading the witness there". The objection was properly overruled. The question, "What if anything did Mr. Chumbley tell you at that time . . .?", was not leading. It did not dredge out any material not already in evidence and did not disclose any predilection by the questioner as to what he might hope the witness would say. Womble v. State, 44 Ala. App. 416,211 So.2d 881, affirmed, 282 Ala. 728, 211 So.2d 893 (1968). Specified grounds of an objection to evidence waive all other grounds.Waters v. State, 360 So.2d 358 (Ala.Cr.App.), cert. denied, Exparte Waters, 360 So.2d 367 (Ala. 1978).
 IV
There was sufficient testimony to identify the green Mercury automobile which was stolen as the one which was located near Mr. Bragg's home. The State proved this identity to a reasonable probability. See Sexton v. State, 346 So.2d 1177,1180 (Ala.Cr.App.), cert. denied, 346 So.2d 1180 (Ala. 1977). Any question of this identity was for the jury.
We have searched the record for error prejudicial to the defendant and found none. The judgment of the trial court is due to be affirmed.
AFFIRMED.
All Judges concur.