ALMON, Justice.
This is an appeal from a judgment denying relief in a suit to cancel a deed because of the alleged mental incompetency of Mo-lee Laminack, a 63-year-old woman.
On December 15, 1977, Molee Laminack and her husband, Melvin, executed the deed in question, which conveyed a fifty-acre tract of land upon which their home was located, to one of their daughters, Clara L. Casey. Title to the land was in Molee’s name. Her husband had previously deeded the land to her because of a problem he had anticipated which is not relevant to this case.
On June 6,1979, after the death of Molee and Melvin, the Laminack’s other daughter, Claudia L. Cagle, and the children of the Laminack’s deceased son, Edward, brought this action to cancel the deed on the grounds that Mrs. Laminack lacked the mental capacity to execute the deed and that the execution was the result of undue influence of Clara Casey.
Apparently, the undue influence claim was abandoned and the only issue before this Court is whether the evidence of Mrs. Laminack’s alleged incompetency is so conclusive as to overcome the trial court’s decision in a non-jury case to uphold the deed.
Appellants assert that the natural disposition of her property, but for her mental state, would have been to her four children or their families, in equal shares, particularly when this was all the land she owned.
There was other evidence, however, which contradicted this argument. It was shown that the tract of land was originally owned by Curtis Casey, Clara L. Casey’s husband. Curtis Casey transferred the land to Melvin Laminack in exchange for a $200.00 automobile. Subsequently, Melvin Laminack transferred the property to his wife. Also, it was shown that Clara L. Casey spent more time and money than the other three children in caring for her mother as Mrs. Laminack’s health began to deteriorate. These facts would lend credence to the respondents’ assertion that there was nothing unnatural in their mother’s act of deeding the property to Clara Casey.
The basis of the appellants’ incompetency claim is that Mrs. Laminack’s health began to deteriorate rapidly during the year 1977. Several friends of the family testified that prior to the date the deed was executed there were several instances when Mrs. Laminack did not exhibit a sound mind; instances when she did not recognize lifelong friends; when she “got lost” in familiar surroundings; and when she did not comprehend what was happening around her. The most notable of these instances occurred in April, 1977, when the whole family was attending the funeral of Mrs. Laminack’s son, Edward (the father of three of the appellants in this case). Claudia L. Cagle testified that at one point after the funeral Mrs. Laminack indicated that she was having so much fun she thought the family should get together like that more often. According to Claudia, her mother acted as if she had forgotten they were there for Edward’s funeral.
Medical evidence was introduced through the deposition of Dr. J. K. McLendon. His examinations revealed, and it was undisput *30 ed at trial, that Mrs. Laminack suffered from arteriosclerosis (hardening of the arteries) and occasional syncope (fainting) episodes as early as May, 1977. Dr. McLendon determined that her condition was not unusual for a 63 year-old-woman, and one which people commonly refer to as senility. He explained that this condition is caused by a constriction in the blood vessels which results in periods of insufficient oxygen to the brain, during which periods the individual might faint, or have difficulty thinking clearly.
Dr. McLendon last examined Mrs. Lami-nack during her hospitalization in early October, 1977, following one of her fainting episodes. He concluded that her arterio-sclerotic vascular disease had developed to the point that she would continue to have periods of mental confusion and depression. In his opinion, she was in no condition to manage her business affairs at that time. However, he admitted that she was quite capable of functioning normally if she were kept in her home environment, and that she might have had lucid periods following her October examination when she was in complete control of her mental capacities and was able to exercise “perfectly normal good judgment.”
There was also undisputed evidence that Melvin Laminack was very influential in Mrs. Laminack’s life. Clara Casey and Claudia Cagle agreed that their mother would have done anything their father asked her to do. Clara Casey stated that her father might have encouraged her mother to deed the property to her. Claudia admitted that she did not think her father would have caused her mother to sign the deed if he thought she was of unsound mind.
The facts concerning the execution of the deed were presented through the testimony of Wayne Smith, an attorney. Mr. Smith drafted the deed at the Laminacks’ request and was present on December 15, 1977, when the deed was executed. He did not have sufficient contact with Mrs. Laminack to offer an opinion as to her competency, but he did see her husband, Melvin, sign the deed and then hand it inside his car to Mrs. Laminack, who then signed it and handed it back to him.
Clara L. Casey was not present at either the drafting or the execution of the deed. In fact, she did not learn of its existence until February, 1978, when she went with her father and paid $25.00 to have the deed recorded.
Clara Casey felt that her mother deeded the property to her because it had originally belonged to Clara’s husband and because Clara was more attentive when Mrs. Lami-nack’s health began to deteriorate. Clara Casey visited her mother at least once every two weeks during the fall of 1977. She saw her twice during December and felt that she was alert and capable of managing her affairs at that time.
In January, 1978, Mrs. Laminack stayed with Clara Casey for a few weeks. It was during this visit that Clara noticed a sudden change in her mother’s condition and rushed her to the hospital, because she thought that her mother was a victim of a stroke. The doctors concluded that she had not had a stroke but they advised Clara to place her in a nursing home, where she remained until her death in November, 1978.
Kelley Jean Laminack, Mrs. Laminack’s other son, testified that he had visited his mother in August 1977, and that she appeared to be capable of handling her affairs at that time. His next visit was on January 15,1978, after Clara had notified him of her apparent stroke. Kelley admitted that his mother’s condition had, then, deteriorated to the point that he doubted her competency-
Although Kelley Laminack was named as a defendant in this case, it must be noted that his testimony was actually against his interest because he stood to receive a one-fourth interest in the subject property in the event the deed was cancelled by the courts.
Thus, having reviewed these facts and the entire record thoroughly, we are of the opinion that the evidence in this case does not mandate a reversal of the trial court’s decision upholding this deed. *31 We are aware that we are authorized to reverse the decision of a trial court if its conclusion is clearly contrary to the great weight of the evidence. Insurance Company of North America v. Mays, 278 Ala. 20, 174 So.2d 700 (1965); Turnham v. Potter, 289 Ala. 685, 271 So.2d 246 (1972); First Alabama Bank of Montgomery v. Adams, 382 So.2d 1104 (Ala.1980).
The appellants had the burden of proving to the reasonable satisfaction of the trial court that the grantor was incompetent at the very time of the transaction. Equitable Life Assurance Society of the United States v. Welch, 239 Ala. 453, 195 So. 554 (1940); Berry v. Berry, 269 Ala. 623, 114 So.2d 916 (1959). However, the evidence presented on this point was in sharp conflict. The trial court, even considering the fact that Mrs. Laminack was suffering from arteriosclerosis and periodic syncope episodes, concluded that appellants failed to prove that she lacked the capacity to fairly understand "the nature and consequences of her act on December 15, 1977, in the presence of her husband and her attorney.
This has been a difficult case for us to resolve and we know it was difficult for the trial judge, particularly in view of Dr. McLendon’s testimony regarding her mental and physical condition sometime prior to the execution of the deed. However, the trial judge was in a better position to observe the witnesses, other than Dr. McLen-don, and had a better opportunity to judge the weight and credibility of their testimony. We cannot say that the decision of the trial judge is clearly contrary to the evidence, and it therefore is due to be affirmed.
AFFIRMED.
TORBERT, C. J., and FAULKNER, EM-BRY and ADAMS, JJ., concur.