# Louisville & Nashville Railroad Co. *v.* Mitchell.

*Action against Railroad Company by Administratrix to recover for Alleged Negligent Killing of Intestate.*

1. *Action against railroad company; sufficiency of complaint.*—In an action against a railroad company by an administratrix to recover damages for the alleged negligent killing of plaintiff's intestate, a count of the complaint is insufficient to charge wanton or intentional injury and is subject to demurrer, which alleges that "defendant, through its servant

[Louisville & Nashville Railroad Co. v. Mitchell.]

or agent in charge or control of said locomotive engine, wantonly or intentionally caused the death of plaintiff's intestate in the manner following, viz.: said servant or agent with knowledge or notice that numerous persons were or would likely be upon the tracks of said railroad in said town or village of Elmore, and would be in great peril of their lives from the rapid running of said engine through said town or village, without proper and sufficient warning or notice of the approach of said engine, wantonly or intentionally ran said engine through said town or village with great rapidity and without proper or sufficient warning or notice of the approach of said engine, and as a proximate consequence thereof, said engine ran upon or against plaintiff's said intestate in said town or village, and so injured him that he died."

2. *Same; sufficiency of evidence.*—One who is injured in consequence of being negligently on a railroad track can not recover unless the railroad employes are guilty of such gross negligence or recklessness as amounts to wantonness or intention to inflict the injury; and such wantonness and intention to do wrong can not be imputed to the employes unless they actually knew of the perilous position of the person on the track, and with such knowledge failed to resort to every reasonable means to avert disastrous consequences; and this doctrine applies where the person injured was walking upon the track in a neighborhood where people were accustomed to use the track to walk across or upon it without any objection on the part of the railroad company.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. A. A. COLEMAN.

This action was brought by the appellee, Sallie E. Mitchell, as the administratrix of the estate of Thweatt E. Mitchell, against the appellant, to recover damages for the alleged negligent killing of Thweatt E. Mitchell, her intestate, who was run over and killed by a train of the defendant in the village of Elmore, on January 1, 1900; the plaintiff claiming $25,000.

The complaint originally contained three counts, and a fourth count was added by amendment. On the trial of the cause, the court gave the affirmative charge for the defendant as to the 1st, 2d, and 4th counts of the complaint, and the cause was tried upon issues made

up under the third count of the complaint. The aver-
ments of negligence as contained in the third count of
the complaint are shown in the opinion.

The defendant demurred to the third count upon the
following grounds: "First. For that said count is in-
consistent and repugnant. Second. For that the said
count avers that the defendant wantonly or intentionally
caused the death of plaintiff's intestate, and then under-
takes to state the facts under which the death was caused
and said facts, so stated, fail to show wanton or inten-
tional negligence. Third. For that, it is not shown
by the court that the plaintiff's intestate was lawfully
upon defendant's track, and no facts are stated which
show that the defendant owed any duty to plaintiff's
intestate at the time and place of the alleged injury.
Fourth. For that the facts, as alleged, that the defend-
ant's agent or servant had knowledge or notice that per-
sons were, or would likely be, upon the track of the said
defendant, is not sufficient to charge the defendant with
wanton or willful negligence in failing to see said per-
sons or keep a lookout for them. Fifth. For that it
appears by the count that the plaintiff's intestate was a
trespasser upon the defendant's track, and the defendant
owed no duty to the plaintiff's intestate to keep a look-
out for him, nor is it averred or shown that the defend-
ant knew, in time to stop the train and to prevent the ac-
cident to said intestate, that the said intestate was upon
the track." This demurrer was overruled, to which rul-
ing of the court the defendant duly excepted. There-
upon the defendants pleaded the general issue and sev-
eral special pleas setting up the contributory negligence
of the plaintiff.

Plaintiff demurred to the pleas setting up the con-
tributory negligence of the plaintiff, upon the ground
that such contributory negligence was no answer to the
wantonness or intentional wrong as claimed in the third
count of the complaint. These demurrers were sus-
tained. The other facts of the case necessary to an un-
derstanding of the decision on the present appeal, are
sufficiently shown in the opinion.

There were verdict and judgment for the plaintiff,

assessing her damages at $9,000. The defendants appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

THOS. G. & CHAS. P. JONES, J. M. FALKNER and WALKER, TILLMAN, CAMPBELL & PORTER, for appellant. The third count of the complaint did not charge willfulnes and wantonness. While it is true that a general averment and the defendant's employes willfully and wantonly ran the train, etc., without more, would have been sufficient, yet, whenever the facts set out do not constitute the willfulness or wantonness, the count is bad.—*Central of Georgia Railway Company v. Foshee,* 125 Ala. 199; *L. & N. R. R. v. Anchors,* 114 Ala. 492; *Birmingham Railway v. Bowers,* 110 Ala. 328; *Memphis & Charleston Railroad Co. v. Martin,* 117 Ala. 382; *L. & N. R. R. Co. v. Orr,* 121 Ala. 489.

The court erred in sustaining the plaintiff's demurrer to the several pleas of the defendant setting up contributory negligence. Of course, contributory negligence is no answer to the third count, if it be held to be good as a count averring wantonness or willfulness. But we insist that the third count only charged simmurrer, we insist that the third count only charged simple negligence, and, therefore, the pleas were good. *Orr's Case,* 121 Ala. 496-497; *Bush's Case,* 122 Ala. 483; *Martin's Case,* 117 Ala. 382; *Brown's Case,* 121 Ala. 226.

C. P. BEDDOW and BOWMAN & HARSH, *contra.*—The third count sufficiently charges wantonness, and the demurrer thereto was properly overruled.—*M. & C. R. R. Co. v. Martin,* 117 Ala. 382; *A. G. S. R. R. Co. v. Anderson,* 109 Ala. 304; *L. & N. R. R. Co. v. Webb,* 97 Ala. 314.

Plaintiff's demurrers to defendant's pleas four, five and six, to third count were properly sustained. These pleas set up simple contributory negligence as an answer to wantonness of defendant.—*L. & N. R. R. Co. v. Watson,* 90 Ala. 68; *L. & N. R. R. Co. v. Orr,* 121 Ala. 499; *L. & N. R. R. Co. v. Markee,* 103 Ala. 160.

HARALSON, J.—1. Count 3 of the complaint was intended to be one for wantonness or willfulness, and was so treated on the trial. Against it, as a count of this character, a demurrer on several pertinent grounds was interposed, which was overruled.

The count alleges, that "defendant through its servant or agent in charge or control of said locomotive engine, wantonly or intentionally caused the death of plaintiff's intestate in the manner following, viz.: said servant or agent, with knowledge or notice that numerous persons were or would likely be upon the tracks of said railroad in said town or village of Elmore, and would be in great peril of their lives from the rapid running of said engine through said town or village, without proper and sufficient warning or notice of the approach of said engine, wantonly or intentionally ran said engine through said town or village with great rapidity and without proper or sufficient warning or notice of the approach of said engine, and as a proximate consequence thereof, said engine ran upon or against plaintiff's said intestate in said town or village, and so injured him that he died."

While the count avers that the servant or agent of the company in charge of the engine wantonly or intentionally caused the death of plaintiff's intestate, it sets out with particularity in what the wantonness, and the intention to inflict the injury, consisted. The whole count must be construed together, and when so construed, the wantonness which in the first part of the count was averred in general terms, will be found to consist, if at all, in the facts particularly set up and relied on to show it. This averment of facts undertakes to point out specifically in what the wantonness, or intention of the servant or agent of the defendant to inflict the injury consisted. Stripped of all unnecessary verbiage, the wanton or intentional act set up in this count is, that the engineer "wantonly or intentionally ran said engine through said town or village, with great rapidity and without sufficient warning or notice of the approach of the engine," with knowledge or notice that numerous persons were or would likely be upon the tracks of said railroad—as a proximate consequence of which wanton or intentional act of running

[Louisville & Nashville Railroad Co. v. Mitchell.]

the engine rapidly, without proper or sufficient warning, the deceased was killed. This was not an averment of an intention to injure the intestate, and, therefore, is not the equivalent of willfulness; nor is it an averment of a reckless disregard as to probable consequences, such as would make it wantonness on the part of the engineer.

In *Memphis & Charleston Railroad Co. v. Martin*, 117 Ala. 382, it was said: "The mere intentional omission to perform a duty, or the intentional doing of an act contrary to duty, although such conduct be culpable and result in injury, without further averment, falls very far short of showing that the injury was intentionally or wantonly inflicted. Unless there was a purpose to inflict the injury, it cannot be said to be intentionally done, and unless an act is done, or omitted to be done, under circumstances and conditions known to the person, that his conduct is likely to, or probably will result in injury, and through reckless indifference to consequences, he consciously and intentionally does a wrongful act, or omits an act, the injury cannot be said to be wantonly inflicted." So, again, in *L. & N. R. R. Co. v. Orr*, 121 Ala. 489, under a count, which alleged, that a train by which the killing was done, was, at the time, running at a dangerous rate of speed, through an incorporated city or across a public street, along which persons in large numbers were continually passing, and that no whistle was sounded or other danger signal given, and that the death of the intestate was the result of the carelessness of the defendant, the court said: "The running of a train [under the conditions mentioned] does not necessarily involve an intention on the part of the trainmen to kill, or such reckless disregard of probable consequences as would amount to wantonness."

"It is only when the employes of the company operating the train fail to exercise reasonable care, to avoid injuring him, after the trespasser had been discovered and his peril of injury becomes apparent, that they are held to be guilty of wantonness or recklessness such as will overcome the contributory negligence of the trespasser."—*Halcy v. K. C. M. & B. R. R. Co.*, 113 Ala. 649.

[Louisville & Nashville Railroad Co. v. Mitchell.]

From this review of the count, it appears that it falls short of averring wantonness or willfulness in inflicting the injury complained of; that it charges no more than that the engineer wantonly or intentionally ran said engine through said town or village of Elmore, without proper or sufficient warning or notice of the approach of said engine, and is, therefore, no more than a count for mere negligence.

2. As to persons walking on or crossing a railroad track it is held that "The mere fact that persons living in the neighborhood of a railroad track have become accustomed to use it to walk upon (or across) without any objection on the part of the railroad company, does not in any manner alter or change the duty of the railroad company to such persons. They are simply trespassers" (*Glass v. M. & C. R. R. Co.*, 94 Ala. 586) ; and "One who is injured in consequence of being negligently on a railroad track cannot recover, unless the railroad employes are guilty of such gross negligence or recklessness as amounts to wantonness or intention to inflict the injury; and that this wantonness and intention to do wrong can never be imputed to them, unless they actually know (not merely ought to know) the perilous position of the person on the track, and with such knowledge, fail to resort to every reasonable effort to avert disastrous consequences. And this doctrine applies as well to densely populated neighborhoods in the country, and to the streets of a town or city, as to the solitudes of the plains or forest."—*Nave v. A. G. S. R. R. Co.*, 96 Ala. 267; *C. of Ga. R. Co. v. Lamb*, 124 Ala. 172; *Highland Ave. & B. R. R. Co. v. Robbins*, 124 Ala. 113; *L. & N. R. R. Co. v. Crawford*, 89 Ala. 240; *C. of Ga. R. Co. v. Foshee*, 125 Ala. 199.

In the case last cited, after announcing the well understood doctrine, that it is the duty of a person approaching the track of a railway for the purpose of crossing it, to stop and look and listen if need be, for the approach of a train, and that the omission of this duty followed by injury in collision with a train, locomotive or car, while attempting thus heedlessly to cross over the track, is as matter of law negligence on the part of the person so contributing to the result, as to defeat his

action counting on the injury as having been produced by the simple negligence of the company or its employes, the court states what seems to be axiomatic, that "It is not possible to conceive that any foot traveler need or could with the proper use of his senses ever go upon a railway in ignorance of the approach of a train sufficiently near to strike him before he crosses over it. No curve even in a deep cut that a train can be operated upon, can be so acute as to deprive him of the opportunity while standing beside the track, to refrain from attempting to cross in front of it."

3.    The facts of this case without conflict are, that Elmore station is a village of about 300 inhabitants, and is not a scheduled station for the train that passed, the fast mail.    The crossing at which plaintiff's intestate was killed was not a street or public thoroughfare. The public crossings, of which there were two, were above and below the depot, some 200 yards or more. The tracks of the railroad, running north and south at this point, were fenced; the fences opened by two gates, one on the east and the other on the west, and a pathway from one gate to the other ran across the railroad tracks, which path was used without objection on the part of the railroad company, so far as appears, by people, generally, of Elmore or from the country, who desired to go from one part of the village to the other, and was much frequented for such purposes.   At no time was it used, so far as appears, as a matter of right but only for convenience without objection on the part of the railroad company.    The train, as the evidence tends to show, ran through, at from 40 to 60 miles an hour, as estimated by different witnesses; that one coming in at the east gate could see up the track, north, about half a mile, and not so far when outside of the gate; that there is a curve eastward in the track coming from the north, before reaching the depot, which curve was some two or three hundred yards from the depot.   Intestate approached the track from the east gate, and the evidence tends to show that he looked up the track north as he crossed the switch track,—which is a few feet away, on the east from the main line.   One

witness testified that he told him to look-out or the train would kill him, but intestate made no reply and went on and was caught and killed just before he got across the main line. There was no evidence that the engineer saw the deceased before the collision occurred, or knew that he was in proximity to the track.

Treating the third count, as we must, as one for simple negligence, and not for wantonness or intentional injury of the deceased, it is apparent that under the principles above stated, the plaintiff's intestate was guilty of negligence, which proximately contributed to his own death, and, on the case if tried upon such a count, the affirmative charge might have been properly given for defendant.

Reversed and remanded.