# Louisville & Nashville R. R. Co. *v.* Porter.

### Injury to Person on Track.

(Decided February 3, 1916.   Rehearing denied March 23, 1916.
71 South. 334.)

1. **Railroads; Persons on Track; Protection.**—A trespasser on a railroad track coming up the track to a crossing is not entitled to the protection or care required of a railroad as to persons using the crossing.

2. **Negligence; Wanton.**—Wanton negligence rests upon the wrongdoers just apprehension of a probability of untoward consequences of his act.

3. **Railroads; Persons on Track; Wantonness.**—Evidence that a trespasser was run down in the day time by a slowly moving train near a station where people were frequently on the track during the day does not justify the submission of wanton negligence.

4. **Same; Trespassers.**—Where a person for his own purposes catches a freight train for a ride thereon, and on alighting therefrom walks on down the track to the station, he is a trespasser.

5. **Same; Burden of Proof.**—The burden of proof of negligence or wantonness which results in killing a person is on planitiff throughout the case, if the person killed be a trespasser.

APPEAL from Blount Circuit Court.

Heard before Hon. J. E. BLACKWOOD.

Action by John Porter, Administrator, against the L. & N. R. R. Co. for damages for the death of his intestate, while on the track.   Judgment for plaintiff and defendant appeals.   Reversed and remanded.

WARD & WEAVER, and M. L. WARD, for appellant.   ERLE PETTUS, for appellee.

SAYRE, J.—Plaintiff (appellee) sued in two counts, charging:   (1) That defendant's servants or agents wantonly or willfully ran or propelled a locomotive engine upon or against plaintiff's decedent, thereby killing him; and   (2) that defendant's servants or agents negligently ran or propelled the engine upon or against plaintiff's decedent after his peril was discovered by one of them, thereby killing him.   Defendant has appealed.   We entertain the opinion that the result of the trial cannot be sustained.

Defendant has a station and two tracks, main line and siding or house track, at Blount Springs. The main line is located to the west, the house track between it and the depot. The depot is to the east of the tracks, which are straight and nearly level for a considerable distance north and south. The spaces between and around the tracks and rails are filled to a practical level with cinders, above which only the rails appear. A north-bound freight train had stopped on the house track some distance south of the depot, where its engine was detached and moved north beyond the depot to shove a cattle car onto a spur track and out of the way. Doing this, it passed a cattle pen where plaintiff's decedent was on some business. This cattle pen was about 200 feet north of the depot. Another freight train, moving south on the main line, had stopped at the water tank just across the tracks from the cattle pen. While the detached engine was in the neighborhood of the spur, the south-bound train moved to the south. Plaintiff's decedent got upon this train, several car lengths back from the engine, and rode down to a point nearly opposite the depot office, where he alighted between the tracks some 30 or 35 feet from the place where he was killed a few moments later. He moved obliquely over toward the office door; but, when he reached the middle of the house track, he turned and started walking along that track to the south. At that time the detached engine was about 60 feet away, moving back to its train. Deceased had gone only a little way along the track, 15 to 20 feet, when the detached engine struck him from behind and killed him. The weight of the evidence goes to show that the engine was moving about 5 or 6 miles an hour; the witness who testified to the highest rate of speed said it was moving 6 or 8 miles an hour. The evidence was in conflict as to whether any signals of approach were sounded as the engine backed.

(1) In view of the fact, previously established and at no time denied, that deceased was walking along the track and not across it, all that evidence which was intended to show that people from the Mulberry neighborhood used a footpath over Duffy's Mountain and a footbridge across a little creek near the railroad by which they approached and crossed defendant's tracks from the west was irrelevant and calculated to work injury to the defense against the first count of the complaint. Deceased was not crossing the track according to the custom of

the Mulberry folks, and notice of what he was doing was not to be brought home to the defendant's agent in charge of the locomotive by knowledge of the wholly different thing customarily done by them; and besides, at the time in question, the southbound train was in the way, so that the Mulberry folks, approaching the railroad from the west, as plaintiff's decedent approached the house track, could not cross. Defendant's objection to plaintiff's question about the footpath that crossed the track and went over the mountain to the west should have been sustained.—*Southern Ry. Co. v. Drake*, 166 Ala. 540, 51 South. 996; *Southern Ry. Co. v. Stewart*, 179 Ala. 304, 60 South. 927. This evidence was, of course, totally irrelevant to the specific issue of subsequent negligence raised by the second count of the complaint.

(2, 3) The verdict in the case, if it is to be referred to the first count of the complaint, may be explained under the evidence on the following hypothesis of facts: That the engineer became actually aware of the presence of deceased upon the track and should have known in the exercise of due caution that deceased was not conscious of the approach of the engine, and thereafter the engineer consciously omitted to do something that his reason told him he ought to do, something that perchance might have averted the disaster—an hypothesis of technical possibility under some phases of the evidence. This would exclude error in the refusal of the general charge requested by defendant. But in its concrete illustration of wantonness such as would justify a verdict against defendant under the first count, the court dealt with wrong of a character different from that to be inferred from the facts we have mentioned as being of possible finding from the evidence. It dealt exclusively with that character of wrong which rests upon an inference of reckless indifference to the probable consequences of a probable situation, the wrongdoer, the engineer, in this case, being charged with knowledge, not that some person is at the time in a position of actual, imminent danger, but with knowledge, based upon previous observation or information, of the probability that some person will be exposed to danger by his manner of operating the engine. Wrong of this sort has been properly characterized as the equivalent of universal malice; to its existence the specific intent to injure any particular person is not essential.—*Weatherly v. N. C. & St. L. Ry. Co.*, 166 Ala. 575, 51 South. 959. This

court has frequently held that to the implication of wantonness it is essential that the act done, or omitted, should be done or omitted with a knowledge and a present consciousness that injury will probably result.—*L. & N. R. R. Co. v. Brown,* 121 Ala. 226, 25 South. 609. Wantonness of that character is the moral and legal equivalent of intentional wrong, and rests upon the just apprehension, with which the wrongdoer is charged, not of a mere possibility, but of a probability, a likelihood, that untoward consequences will ensue to some one, and this probability, this likelihood, must have support and foundation in a reasonable interpretation of the evidence. Eliminating the testimony in respect to the custom of the Mulberry folks, which under the circumstances was entitled to no consideration, the only evidence lending color or semblance of support to the hypothesis of wantonness in the sense of universal malice was, to quote the language of the witness, that "people were on the track at the point where the accident occurred frequently, all during the day." In view of the undisputed evidence that the engine was run in the daytime, and not in excess of 8 miles an hour, this evidence was too vague and indefinite to sustain the charge, even though the engine was backed without signals of approach along by the side of a village of not exceeding 200 inhabitants. That part of the court's oral charge assigned for error and which undertook to define "wantonness" such as may be inferred from the customary presence of people on the track was misleading and erroneous as authorizing the jury to believe there was in the evidence such an issue for their decision.

(4, 5) Clearly, the deceased was a trespasser upon the track, and defendant owed him no original duty to know he was there; but if the engineer was apprised of the presence and peril of deceased upon the track in time to save him by the prompt use of any means at his command, and thereupon negligently, willfully, or with conscious indifference to the probable consequences of the situation thus known to him, omitted to do what he might have effectually done to save deceased, then defendant was liable under the first or second count of the complaint, according as the jury may have found that the engineer intended to kill plaintiff's decedent or was consciously indifferent to that result on the one hand, or that his omission was the result of more inadvertence on the other. These were the true issues made by the pleading and the evidence, and to these questions of fact the con-

[Louisville & Nashville R. R. Co. v. Lynne.]

sideration of the jury should have been limited.—Cases cited first above. The burden of proof as to both counts was upon the plaintiff throughout the case.—*Carlisle v. A. G. S. Ry.*, 166 Ala. 591, 52 South. 341; *L. & N. R. R. Co. v. Jones*, 192 Ala. 532, 67 South. 691; *L. & N. R. R. Co. v. Rayburn*, 192 Ala. 494, 68 South. 356; *Empire Coal Co. v. Martin*, 190 Ala. 169, 67 South. 435.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.