(81 South. 15)

SAGINAW LIME & LUMBER CO. v. HALE. (7 Div. 984.)

(Supreme Court of Alabama.  Dec. 19, 1918. Rehearing Denied Feb. 13, 1919.)

1. RAILROADS ⬳398(4, 5) — INJURIES TO TRESPASSERS — SUBSEQUENT NEGLIGENCE.— EVIDENCE.

In an action for damages for the death of plaintiff's intestate killed by a car while walking upon track, evidence held insufficient to show negligence after the discovery of intestate's peril or wanton or intentional injury.

2. RAILROADS ⬳390—INJURY TO TRESPASSER — SUBSEQUENT NEGLIGENCE — DUTY OF TRAINMAN.

Where plaintiff's intestate was killed while walking upon defendant's track, the duty of defendant's switchman, riding on a car pushed by an engine, so far as subsequent negligence is concerned, dated, not from his discovery of intestate upon the track, but from the moment be became aware that intestate was ignorant of the approaching train.

Appeal from Circuit Court, Shelby County; Hugh D. Merrill, Judge.

Suit by Thomas B. Hale, administrator of the estate of Charles E. Hale, deceased, against the Saginaw Lime & Lumber Company, for damages for deceased's wrongful death. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Percy, Benners & Burr, of Birmingham, for appellant.

Longshore, Koenig & Longshore and Riddle & Ellis, all of Columbiana, for appellee.

GARDNER, J. Suit for recovery of damages for the death of one Charles E. Hale, who was killed while walking down the railroad track of the defendant, along which a car and engine were being operated.

The cause was submitted to the jury upon counts 5 and 6; the former seeking recovery upon the theory of negligence after discovery of intestate's peril, and the latter is referred to as the "wanton" count.

The salient facts are without conflict, and are disclosed by the testimony of the engineer and witness Bryant, introduced by the plaintiff.

The defendant lumber company used a spur railroad at its plant, and the train by which intestate was killed consisted of an engine and a coal car; the latter being pushed in front of the engine. The train was going down a slight grade, with the steam off, and, to use the language of the engineer, "was rolling about five or six miles an hour."

The testimony of the engineer disclosed that he could not see the track ahead, because the coal car was in front of the engine, and he therefore sent Bryant, the switchman, to sit on the front end of the coal car to keep a "lookout." The track at this point was frequently used as a passageway by employés of the mill, as well as by others not so employed. The switchman, Bryant, got on the car at the water tank, and kept a lookout down the track "off and on all the time." Bryant testified that he saw the intestate when he was about 100 yards ahead, walking between the rails, going in the same direction in which the train was moving; that the mill hands walked up and down the track all during the day, and he was under the impression that it was some of the hands. Intestate was "very hard of hearing," to use the language of some of the witnesses, but Bryant did not know him, or of his defective hearing. This witness further testified that, when the train was in about two car lengths (a car being 40 feet in length) from the intestate, the latter went to one side, as if he was going to get off, and that he (Bryant) did not flag the train down then, as intestate's conduct indicated that he was going to get off the track; that intestate then came back into the middle of the track, and, upon seeing that intestate was not going to get off, he gave the stop signal to the engineer, who stopped the train "as quick as he could." The testimony of the engineer shows that he did not see Hale, and could not have seen him on account of the coal car, and that as soon as the switchman gave him the stop signal he "'did all possible to stop it, and did stop it in the quickest possible time," giving details as to what was done in this particular. It is further shown that he stopped the car in about a car length, or less than a car length, but that one wheel had run over the intestate and the second wheel was on him.

The defendant requested the affirmative charge, which was refused; and it is urgently insisted upon this appeal that this was error calling for a reversal of the cause.

[1] We are unable to see any evidence in this case showing actionable negligence on the part of the engineer or switchman for which recovery could be had under the doctrine of subsequent negligence, or wanton or intentional injury. If the engineer omitted to do anything which he should have done, or did anything which he should not have done, it is not made to appear by this record. Upon the undisputed evidence in the case, he was aware of no danger to a human being until he was given the stop signal, and his evidence discloses that immediately upon receipt of this signal he did all that was possible to avert any injury. There is clearly no evidence upon which to support the "wanton" count, as there was no evidence whatever tending to show that the train was being recklessly or negligently operated, but, on the contrary, proof shows that it was being run at a very slow rate of speed, with the steam off—as stated by witness, "rolling down a slight grade."

[2] While the evidence of the switchman discloses that he saw the intestate on the track 100 yards ahead, yet it is also shown that the track was frequently used all during the day by the employés, and that within two car lengths of intestate he turned to the left as if to leave the track, and that, immediately upon discovering that intestate was not going to leave the track, he gave the stop signal. His duty, so far as subsequent negligence is concerned, dated, not from his discovery of intestate upon the track, but from the moment he became aware that he (intestate) was ignorant of the approaching train.

The evidence has been carefully considered in consultation, and the conclusion reached that the facts here disclosed are as strong, if not slightly stronger, in favor of the affirmative charge for the defendant than those in the recent case of L. & N. R. R. Co. v. Farley, 78 South. 221.[1] Upon that authority, as well as L. & N. R. R. Co. v. Rayburn, 192 Ala. 494, 68 South. 356, So. Ry. Co. v. Stewart, 179 Ala. 304, 60 South. 927, and Cent. of Ga. Ry. Co. v. Blackmon,

[1] 201 Ala. 365.

169 Ala. 304, 53 South. 805, we are of the opinion that the defendant was entitled to the affirmative charge, for the refusal of which the judgment must be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.