28 So.2d 796

**LOUISVILLE & N. R. CO. v. SUNDAY.**

**3 Div. 465.**

Supreme Court of Alabama.

Jan. 23, 1947.

598

Steiner, Crum & Weil, of Montgomery, and McMillan, Caffey & McMillan, of Brewton, for appellant.

600

BROWN, Justice.

This is an action by appellee as the administrator of the estate of Mary Ann Sunday, deceased, under § 123, Title 7, Code of 1940, against the appellant, predicated on "alleged wrongful act, omission or negligence of the defendant, its agents, servants or employes, while acting within the line and scope of their authority, causing said death."

The amended complaint upon which the case was submitted to the jury contained six counts: The first, third and fourth ascribing said death to the negligence of said agents or servants of defendant, acting within the line and scope of their employment; the second ascribing the death to the willful and wanton conduct of "its (defendant's) agents, servants or employees, then and there acting in the line of their duty as such."

The fifth count avers that while "The plaintiff's intestate, Mary Ann Sunday, deceased, was on or upon Palafox Street, which was a public highway or street in Flomaton, Escambia County, Alabama, and at a place on said public highway or street where said highway or street crosses the railroad tracks of the defendant, Louisville & Nashville Railroad Company, a corporation, the same being a public road crossing at said place and at said time and place a locomotive engine or train controlled or operated by the defendant was caused to collide with the plaintiff's intestate, Mary Ann Sunday, deceased, who was thereby killed and the plaintiff alleges that his said intestate, Mary Ann Sunday, deceased, who was the plaintiff's mother, was so killed as the proximate consequence of the negligence of the defendant in that the defendant negligently caused said locomotive engine or train to collide with the plaintiff's intestate and killed her at the time and place aforesaid."

The sixth count ascribes the death to the negligence of the defendant's agent or servant in charge of the locomotive after said servant discovered the peril of plaintiff's intestate.

The defendant pleaded the general issue, not guilty, to all of said counts and contributory negligence to the simple negligence counts.

The defendant had a series of eight tracks lying between its station on the south and the Town of Flomaton on the north. The place of the alleged injury and death was on the street-crossing leading from the defendant's station house into the Town of Flomaton. Said intestate was using the part of the crossing ordinarily used by pedestrians. The crossing was thirty feet wide and the place at which plaintiff's intestate was run upon and killed was on the northerly side of this street crossing, where the tender of the backing locomotive ran upon her just as she stepped across the first rail of the eighth track and as the tender entered the margin of the street. Some of these tracks led to the defendant's yards where it supplied coal and water to its locomotives. The locomotive and tender were on down grade and were coasting and not making much noise. As to whether the bell was ringing, the evidence was in conflict. The catastrophe occurred in broad daylight and the deceased was not discovered by anyone until just immediately before she was run against and killed, the trucks of the tender passing over her body and the engine stopping before the forward trucks of the tender reached her. She was killed instantly with her body lying between the rear and front trucks of the tender.

As the evidence tends to show, she was on foot and was proceeding north. When discovered by the engineer on another train, which had stopped north of the crossing and was starting ahead, the intestate was stepping across the first rail of the last of the eight tracks. He blew his whistle and the engineer on the other engine immediately applied the brakes and stopped his en-

gine, which was moving some three to four miles per hour.

There was evidence tending to show there was no one on the locomotive which caused the death except the engineer and he was on the north side, sitting in his seat, but the coal in the tender which had been freshly loaded obscured his view of the south side of the track upon which the train was backing. His view was limited to the north side. The tender which ran against and killed plaintiff's intestate had been cut loose from its train, crossing over the crossing into the yards to obtain fuel and water and after being so supplied, was backing up to be coupled to the train of cars which it left behind. There was evidence tending to show that the fireman was not on the locomotive as it was backing and the front brakeman who was the flagman testified that he went into the cafe when the engine and tender were cut loose from the train, but that he had returned to the south side of the street and was making observations of the crossing and at no time saw said intestate. There was also evidence tending to show that two or three men were walking down the same track on which this engine and tender were backing and that the end of the tender came in contact with one of these men and knocked him up against the fence running along the north side of these eight tracks.

The evidence of the engineer and fireman was to the effect that the fireman was on the engine and the engineer instructed the fireman to keep a lookout at the crossing and the fireman testified that he looked back but saw no one.

The evidence tended to show that the attention of the deceased was attracted to the train on the other track, which was pulling out, and the blowing of its whistle when the engineer of the last mentioned train discovered plaintiff's intestate just as she stepped over the first rail of the eighth track and was run upon by the backing tender. There was also evidence tending to show this was a populous crossing used mostly by pedestrians and traffic going to and from the defendant's station and the community immediately east thereof on the Florida side. The evidence is without dispute that there was no one on the rear of the tender keeping a lookout as it backed across this crossing.

The burden was on the defendant to prove its plea of contributory negligence and in the light of the evidence, the substance of which we have stated, the question as to whether the defendant's agents or employees were guilty of negligence proximately causing the death of plaintiff's intestate was, under the evidence, for the jury as was the question of contributory negligence. Therefore, the general affirmative charge and charges two and five were properly refused.

Count two of the complaint is in case, ascribing the wanton and willful conduct to the servants and agents of the defendant, while acting within the line and scope of their employment. Louisville & N. R. Co. v. Abernathy, 197 Ala. 512, 73 So. 103; Atlantic Coast Line R. Co. v. Brackin, ante, p. 459, 28 So.2d 193.

There was an absence of evidence showing or tending to show that any of the defendant's agents or servants were guilty of willful or wanton wrong. Louisville & Nashville R. Co. v. Porter, 196 Ala. 17, 71 So. 334; Atlantic Coast Line R. Co. v. Brackin, supra; Central of Georgia Ry. Co. v. Bates, 225 Ala. 519, 144 So. 9; Central of Georgia Ry. Co. v. Corbitt, 218 Ala. 410, 118 So. 755. The court, therefore, erred in refusing defendant's requested written charge three.

There is no form of complaint prescribed by the statute in actions under the homicide act and, therefore, the fifth count of the complaint is not aided by the holding heretofore made in Abingdon Mills v. Grogan, 167 Ala. 146, 52 So. 596, and Bryant v. Hartford Fire Ins. Co., 230 Ala. 80, 84, 159 So. 685. Said count clearly charges corporate participation in the damnifying act. There is an absence of evidence showing such participation. The defendant was, therefore, due the affirmative charge as requested as to said count 5. City Delivery Co. v. Henry, 139 Ala. 161, 34 So. 389.

There is an absence of evidence showing that the engineer who was in charge of the locomotive causing the death of plaintiff's intestate or any other

member of the crew of the defendant discovered the peril of plaintiff's intestate until she was struck. Therefore, the defendant was due the affirmative charge as to count 6 of the complaint,—charge 13 which was refused. Hulsey v. Illinois Central R. Co., 242 Ala 136, 5 So.2d 403; Central of Georgia Ry. Co. v. Corbitt, supra.

The matter stricken from the answer of the defendant to the interrogatories propounded under the statute was the mere conclusion of a person who is shown not to have been present at the time of the death of the plaintiff's intestate, and the court did not err in striking said conclusion.

The court erred in defining wantonness, in the oral charge, in that it pretermitted the element of "high and dangerous rate of speed." Bailey v. Southern Railway Co., 196 Ala. 133, 72 So. 67; Southern Ry. Co. v. Miller, 226 Ala. 366, 147 So. 149; Gaynor, Adm'x, v. Louisville & Nashville R. Co., 136 Ala. 244, 33 So. 808.

For the errors noted, the judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

GARDNER, C. J., and LIVINGSTON and STAKELY, JJ., concur.