.63 So.2d 574

**LOUISVILLE & N. R. CO. v. JOHNS.**

**3 Div. 641.**

Supreme Court of Alabama.

Feb. 26, 1953.

Steiner, Crum & Baker, Montgomery and B. E. Jones, Evergreen and R. L. Jones, Monroeville, for appellant.

442

Jones & Key, Evergreen, for appellee.

STAKELY, Justice.

This suit was instituted under the homicide act by Edgar L. Johns as administrator of the estate of J. A. Johns, deceased, against the Louisville & Nashville Railroad Company for damages for the death of J. A. Johns deceased. The case was submitted to the jury on four counts, count four charging simple negligence and counts 6, 7 and 8 charging wilful or wanton injury. The jury returned a verdict in favor of the plaintiff. Hence this appeal.

· The main line of the Louisville & Nashville Railroad Company (appellant) between Montgomery and Mobile runs through the center of the City of Evergreen, its general direction being north and south. In the City of Evergreen there is a street on each side of the railroad. However, there are

no buildings or other permanent obstructions between the railroad and these streets. On the west adjoining the railroad is West Front Street. The stores on this street are on the west side of the street. On the east adjoining the railroad is East Front Street and stores on this street are on the east side of the street. Both of these streets are open up to the edge of the railroad.

The railroad has four tracks through the center of the City of Evergreen, which divide West Front Street from East Front Street. The track on the western margin of the railroad is a side track, which is used merely for switching purposes. The second track on the west is known as the passing track and is used for passing when trains meet in Evergreen. The third track from the west is the main line of the Louisville & Nashville Railroad on which all through trains run, unless such trains meet, in which event one train uses the passing track. The east track of the Louisville & Nashville Railroad Company running through Evergreen is generally referred to as the team track. This last named track runs beside the Louisville & Nashville Station and also runs along the margin of East Front Street. There is a driveway adjoining this track for quite a distance north of the station and on this track car loads of freight are loaded and unloaded. When full car loads of freight are consigned to Evergreen such cars are set out on the team track to be unloaded and when empty cars are placed to be loaded in Evergreen, they are loaded on this track, called the team track. Cars were originally loaded and unloaded with teams. Hence the term "team track". Although trucks are now used by shippers the track is still referred to as the team track. The Louisville & Nashville Station in Evergreen is at the south end of town and is between the team track and East Front Street. Just at the north end of the station is a crossing from West Front Street to East Front Street. This crossing is not in line with any street but simply joins East Front Street and West Front Street. It has no name as a street but is usually referred to as the Depot Crossing. Four Hundred Twenty-three (423) feet north of the depot cross-

ing, Rural Street crosses the Louisville & Nashville Railroad. This crossing is known as the Rural Street Crossing. The depot crossing, which has been referred to, and Rural Street Crossing are the only two public crossings of the Louisville & Nashville Railroad in the central part of the City of Evergreen.

Immediately east of the eastern railroad track, which is described as the team track, and between the two aforesaid crossings, the pavement extends up to the end of the cross-ties, making a paved walk or driveway north and south immediately joining and to the east of the team track.

There was introduced in evidence an engineer's drawing of the lines of the Louisville & Nashville Railroad as they pass through the City of Evergreen. There was also introduced in evidence a picture which shows the tracks and crossings to which reference has been made. These exhibits show very clearly the tracks and crossings which have been referred to.

On June 12, 1950 the local freight train of the Louisville & Nashville Railroad Company which was running south reached Evergreen shortly before noon. The crew of this train consisted of C. D. Lammon, engineer; Arthur Watson, fireman; T. R. Dunn, conductor; J. A. Bethea, brakeman, and Sam Hicks, flagman.

This local freight train came in on the passing track, which is the second track from the west, and traveled on south until the caboose was south of the depot crossing. The conductor Dunn went into the station and ascertained that the train was to pick up a car load of pulp wood and that he had certain cars to set out at Evergreen. After determining what switching had to be done, he gave the necessary instructions and went back to the caboose of the train to do certain paper work. Accordingly he did not see the accident, the basis of this litigation. The engine upon which was the engineer Lammon and the fireman Watson switched over to the team track. The flagman Hicks went immediately to Rural Street Crossing so as to protect persons crossing on this street while the switching was being done. The brakeman Bethea was coupling and un-

coupling cars and protecting the Depot Crossing.

The engine, which it will be recalled was headed south, with four cars attached thereto, backed up the team track to a point north of the Rural Street Crossing to get the load of pulp wood, which was to be taken south on the train. The engine and the four cars and in addition thereto the pulp wood car then pulled south down the team track until the pulp wood car was south of the cross-over switch, which is just north of the Depot Crossing. The brakeman Bethea then threw the switch and the engine backed up a slight distance. Bethea uncoupled the car of pulp wood, which ran on the cross-over switch over on to the main line and stopped just south of the Rural Street Crossing. The flagman Hicks, who was protecting the Rural Street Crossing, then came to this car of pulp wood and put chocks under the wheel so that it would not move and then went back to his station at the Rural Street Crossing. The engine with four cars attached thereto then moved back on the team track and went far enough south so that the cross-over switch was cleared. The next movement of the train, which was contemplated, was to set out the north three cars which were attached to the engine on the team track north of the Rural Street Crossing, where they could be loaded.

When the engine and four cars had moved south on the team track so that the cross-over switch was cleared, the brakeman Bethea went to the switch and threw the switch, so that as the train backed up the cars would remain on the team track. He then crossed over to the west side of the team track and gave the engineer a signal and the engine backed up at a speed which various witnesses estimated at from 3 to 15 miles per hour. As the cars rolled by him the brakeman Bethea uncoupled three cars from the train by reaching in and pulling the pin. These three cars rolled back north on the team track to a point just north of the Rural Street Crossing, where they were to be left for loading. The brakeman Bethea testified that when he came across from the switch and gave the signal for the train to back

up, the team track was clear to the north of him. After he uncoupled these three cars, the brakeman walked to the Depot Crossing to protect it and all the time Sam Hicks was on the Rural Street Crossing to protect that crossing. According to the witness Bethea, the cars were moving 4 to 5 miles per hour, and he could not have reached in and uncoupled the cars if they had been running 10 to 15 miles per hour.

The undisputed evidence shows that J. A. Johns, plaintiff's intestate, came from the west side of the railroad between the two public crossings, that is the Depot Crossing and the Rural Street Crossing, and at the time was walking in an easterly direction across the several railroad tracks at a place where there was no regular crossing, though a number of persons customarily cross the railroad between these two crossings. He walked toward the east until he reached the center of the team track. He reached the team track just about the time the engine was backing up and the three cars were cut loose from the engine by the brakeman Bethea. There was nothing to prevent the deceased from seeing this train and cars. He walked east however without stopping, until he reached the center of the team track without stopping, looking or listening, and then turned north in the center of the team track and started walking in the center of the team track north toward the Rural Street Crossing. The flagman Hicks was standing on the Rural Street Crossing. He saw the deceased walking easterly across the tracks and that he had plenty of time to cross the team track and reach the pavement on the east side thereof. When the deceased failed to continue across the team track but turned north thereon, the flagman Hicks immediately started running toward him yelling and waving his hands, but was unable to attract his attention until just before the cars hit him. The three cars which had been cut loose from the engine and were rolling north along the team track struck the deceased in the back, causing his death. The flagman Hicks had practically reached the deceased at a point some 125 to 150 feet south of the Rural Street Crossing when he was struck. The flagman Hicks then

turned and outran the cars to the Rural Street Crossing, where he had been stationed during all the switching operations, so as to protect this crossing.

I. We agree with the contention of appellant that there was a fatal variance between the allegations of the several counts on which the case was submitted and the proof offered in support thereof. It is the theory of the law that probata and allegata must correspond and the plaintiff will not be permitted to count on a specific duty and its breach and recover by proving the breach of another duty. Orr & Lanning v. Boockholdt, 10 Ala.App. 331, 65 So. 430; Alabama Great Southern R. Co. v. Thomas, 83 Ala. 343, 3 So. 802; Central of Georgia Railroad Co. v. Simons, 150 Ala. 400, 43 So. 731.

In each count of the complaint the plaintiff alleges in effect that his intestate was crossing the railroad at a point 250 feet south of the Rural Street Crossing in the City of Evergreen at the time the accident occurred. While it is alleged that numbers of people were accustomed to cross the railroad in this vicinity, each count shows that the deceased was not crossing at a public crossing. While the allegation in each count is that the deceased was crossing the railroad, the undisputed evidence shows that when the injury occurred, the deceased was walking longitudinally along the railroad in the center of the team track. He was walking north between the rails of the team track and was not crossing the railroad as alleged.

In count 4 it is alleged that the plaintiff's intestate was struck by the cars "as he was lawfully crossing the tracks of said defendant at a point, towit, 250 feet south of Rural Street Crossing in the City of Evergreen." Count 6 makes the following allegation, plaintiff avers "that on said occasion his intestate was lawfully proceeding on foot across the tracks of defendant at a point 250 feet south of Rural Street Crossing in the City of Evergreen." In count 7 it is alleged, "that said freight cars ran over, upon or against the person of plaintiff's intestate as he was proceeding on foot across the tracks of the defendant at the time and place aforesaid." Count 8 alleges that "plaintiff avers that on said occasion his intestate was lawfully proceeding on foot across the tracks of said defendant at a point towit 250 feet south of Rural Street Crossing in the City of Evergreen."

The proof, however, was undisputed that the deceased at the time of his injury was walking longitudinally along the track of the defendant and between the rails. Only four persons testified as to any facts tending to show the movements of the deceased at or just before the accident. Floyd Dees, a witness for the plaintiff, states that at the time of the injury the deceased was walking north between the rails of the track. The same witness again testified that the deceased was walking between the rails of the east track. He further testified that when he saw the deceased he was in the middle of the track and had his back toward the cars and was looking north toward Montgomery.

The only other witness for the plaintiff who saw the accident was Elmo Grace. He testified that he was getting in his car on East Front Street and he heard a railroad man hollering "look out." That he looked up and just as he looked up the cars hit Mr. Johns. He stated further that he didn't know where Mr. Johns came from or which way he was travelling, that he only saw him just as he was struck.

This was all the evidence for the plaintiff on the question of which way the deceased was travelling when he was struck.

J. A. Bethea, a witness for the defendant, testified that after he threw the switch just north of the Depot Crossing, so as to put the engine and cars on the team track, that he walked back to the west side of the team track, looked up the team track and it was clear and he gave the engineer the signal to back up. He then went along beside the train until it reached the proper speed and uncoupled the three cars, which were to be left in Evergreen for loading. He testified that he never saw the deceased, but when he heard the flagman Hicks hollering and he saw him running south from Rural Street Crossing toward the cars, he stooped down and looked under the cars and what he saw was "legs going north

between the two rails on the team track." The only person who saw the deceased enter on the team track and the direction from whence he approached was the defendant's witness Sam Hicks, who was the flagman protecting Rural Street Crossing. He testified in effect that about the time the cars were being switched and cut loose, he saw Mr. Johns walking across the railroad tracks toward the east, that without stopping he walked east until he reached the center of the team track and then turned north between the rails of the track and continued north between the rails of the track until the cars overtook and struck him. The testimony of the witness Hicks is undisputed as to the fact that the deceased did not stop, look or listen; that he walked on to the team track when the engine and cars were in plain view and when he had plenty of time to cross the track; that instead of crossing he turned north and was walking between the rails of the team track when he was struck.

■ We have pointed out in some detail that the allegation in each count is that the deceased was walking across the railroad tracks, while the entire evidence is to the effect that he was walking longitudinally between the rails of the train track when he was struck. It is obvious that this constitutes a material variance between the allegation and the proof. There is no doubt that when the deceased entered upon the team track and turned north and walked between the rails thereof, he became a trespasser, and the defendant owed him no duty except not to injure him after his peril was discovered. Watts v. Atlantic Coast Line R. Co., 256 Ala. 352, 54 So.2d 601; Louisville & Nashville R. R. Co. v. Porter, 196 Ala. 17, 71 So. 334; Birmingham Southern Ry. Co. v. Fox, 167 Ala. 281, 52 So. 889.

This brings us to the matter of how the question of variance was raised before the lower court. In the case of Kurn v. Counts, 247 Ala. 129, 22 So.2d 725, 727, this court said:

"It seems to us that the requirement of the rule that objection be made at trial is where there is a certain piece of evidence or bit of testimony which shows the variance and is not admissible for other necessary purposes. When that is not the situation, and the evidence which shows the variance consists on a summation of it, or inferences drawn from it in the course of the trial, and it is all admissible for other purposes, and therefore not subject to objection and exclusion on account of the variance, the rule should be held to be complied with if the general charge is requested, and the attention of the court is directed to the specific nature of the variance and what makes it so. But a general statement to the court that it is requested on account of a variance is not specific enough. Carter v. Shugarman, supra (197 Ala. 577, 73 So. 119). It follows that the variance was not here properly presented to the trial judge under Rule 34, supra (Rule 34, Circuit Court Practice, Code of 1940, Tit. 7 Appendix)." [Parenthesis supplied.]

■ The plaintiff put on a number of witnesses to prove that numbers of people customarily crossed the tracks of the defendant in the City of Evergreen, but this was directly in support of the allegations of his complaint and not a variance therefrom. All the evidence which showed that the deceased was walking longitudinally along the tracks of the defendant at the time of his injury was admissible as part of the res gestae and could not be objected to on the ground of variance.

So the record shows that there was no evidence to which the plaintiff could object on the ground of variance. However, the record shows that after the plaintiff and defendant rested, counsel for the defendant presented the matter of variance to the court by requesting the general charge, citing a number of authorities and insisted on the variance between the allegations and the proof, which we have pointed out. The court was specifically advised that this was one of the grounds on which the defendant was asking for the general charge.

We consider that there was a fatal variance between the allegations and the proof and the court for this reason was in error in refusing to give the general charge requested by the defendant.

II. We think the court was in error in refusing to give the affirmative charge requested as to count 4 of the complaint. Count 4 is the only count which was submitted to the jury which claims damages for simple negligence. As we have heretofore pointed out, this count alleges that the plaintiff's intestate was struck by certain freight cars when he was crossing the tracks of the defendant at a point towit 250 feet south of the Rural Street Crossing in the City of Evergreen. There is no. allegation in the count that any agent of the defendant became aware of the perilous position of the deceased and was thereafter guilty of actionable conduct. In other words, the count alleges that the deceased was struck at a point where there was no public crossing. In the recent case of Louisville & N. R. Co. v. Sunday, 254 Ala. 299, 48 So.2d 216, it was said in effect that when simple negligence constitutes the cause of action, it is incumbent upon the plaintiff to bring himself within the protection of the negligence averred by alleging such a relationship as would enable him to recover for initial negligence. And so where construing a complaint most strongly against the pleader, it appears that the injured person was a trespasser at the time of the injury, the complaint is bad as against apt demurrer. As has been shown the undisputed evidence in the case shows that deceased was a trespasser. The undisputed evidence further shows that no one in charge of the engine which propelled the cars ever knew that deceased entered on to the team track. The undisputed evidence further shows that the defendant's agent, the flagman Hicks, who was protecting the Rural Street Crossing, was the only person who saw the deceased enter upon the team track and that he immediately started running toward him, waving his arms and yelling and did all that he could to protect him. It, therefore, appears that the defendant was entitled to the general affirmative charge as to count 4 because there was no proof of any negligence on the part of the defendant.

Furthermore we consider the undisputed evidence shows that the deceased was guilty of contributory negligence and if so, this would entitle the defendant to the general charge as to this count. It appears without dispute that the deceased came from the west side of the tracks, travelling east; that he was walking "pretty pert"; that he did not look either way; that he did not pause and that he had plenty of time to cross the tracks, but that he walked to the center of the team track and turned north ahead of the cars and that when he entered the team track the cars which struck him were the length of two cars distant from him. As the deceased turned north on the team track, the flagman Hicks started to run toward him and did all he could to prevent injury to him.

J. D. Hyde, a witness for the plaintiff, testified that the deceased was a man approximately 70 years of age, that he lived in the same community with the witness who lives in the rural section of Conecuh County about twelve miles from Evergreen. He further testified that deceased had lived in Conecuh County all of his life, that Evergreen was his trading center and that he had lived near Evergreen all of his life. At the time of the injury it was broad daylight near the noon hour. There was nothing to prevent Johns from seeing the engine and the cars. He knew the railroad tracks and the walkway adjoining the railroad tracks. Yet he did not stop, look and listen. We think it is clear that the deceased, under the undisputed evidence, was guilty of contributory negligence and for this reason the defendant was entitled to the affirmative charge as to count 4. Louisville & Nashville Railroad Company v. Mitchell, 134 Ala. 261, 32 So. 735; Gulf, Mobile & Ohio Railroad Co. v. Sanders, 255 Ala. 386, 51 So.2d 531.

The situation is not changed by the fact that one is crossing a series of tracks because in such a situation the person must stop, look and listen as often as necessary, so as to be sure he is not in danger of being struck by a train. Louisville & Nashville R. Co. v. Turner, 192 Ala. 392, 68 So. 277.

The appellee insists, however, that recovery for subsequent negligence can

be had under the allegations of count 4, which is a count for simple negligence. It must be conceded that subsequent negligence can be the basis for recovery under such a count. Louisville & N. R. Co. v. Abernathy, 192 Ala. 629, 69 So. 57; Kendrick v. Birmingham Southern Ry. Co., 254 Ala. 313, 48 So.2d 320. However, we fail to see how the facts in this case can substantiate a charge of subsequent negligence. The Depot Crossing was protected by the brakeman Bethea and the Rural Street Crossing was protected by the flagman Hicks. The flagman Hicks was the only agent of defendant to discover the peril of Johns and immediately when such peril was discovered, the flagman Hicks ran toward Johns, waving his arms and yelling at him in an effort to attract his attention and protect him. The deceased had only to step off the track to the pavement about 2½ feet away to a place of safety and he had ample time to do that. Surely such preventive action was sufficient to relieve the defendant of any charge of subsequent negligence. Until the deceased turned north and began to walk between the rails of the team track there was nothing to indicate that he would not remain out of danger and no immediate action was incumbent upon the flagman Hicks. Callaway v. Eason, 248 Ala. 523, 28 So.2d 560; Watts v. Atlantic Coast Line Ry. Co., 256 Ala. 352, 54 So.2d 601. The intestate being a trespasser on the defendant's tracks at the time he was run over, the defendant's servants owed him only the duty of preventing the injury, if they could do so, after discovering his peril on the tracks. Kendrick v. Birmingham Southern Ry. Co., supra. And the right of recovery must be tested by the duty owed plaintiff's intestate under the evidence in the case and not by some duty owed the general public. Watts v. Atlantic Coast Line Ry. Co., supra.

III. It has been shown that the defendant was entitled to the affirmative charge as to counts 6, 7 and 8, which charge wilful or wanton misconduct on the part of the defendant, because of a variance in the allegations with the proof. It further seems to us that the defendant was entitled to the affirmative charge as to all of these three counts because the proof was not sufficient to carry either of these counts to the jury.

The undisputed evidence shows that while the switching operations were in progress, Lammon, the engineer, and Watson, the fireman, were both at their posts of duty on the engine. Dunn, the conductor, was in the caboose of the train where his duty required him to be. Bethea, the brakeman, was throwing switches and guarding the Depot Crossing; Hicks, the flagman, was guarding the Rural Street Crossing. These men constituted the entire crew of the train. There were no other agents of the defendant present and it is to be observed that each of these employees testified in the case.

The undisputed evidence shows that Lammon and Watson from their places on the engine could not see up the tracks because of the box cars behind the engine and although they were looking in a northerly direction along the tracks, they never saw the deceased. Bethea, the brakeman, threw the switch on the east side of the tracks just north of the railroad crossing. He then walked back to the west side of the train track, looking north along the track and it was clear. He then signalled Lammon, the engineer, to back up and when the train reached him, he then cut off three cars and these three cars rolled back towards Rural Street Crossing. The brakeman Bethea never saw the deceased until he saw the flagman Hicks running toward the cars waving his arms and yelling. He then stooped and could see, looking under the cars, the feet of Johns walking north between the tracks and ahead of the cars. The testimony of the brakeman Bethea is exactly in accord with that of the flagman Hicks. Bethea states that Johns, the deceased, was not on the Team Track when the signal was given to the engineer to back up. The flagman Hicks further testified that Johns walked east, crossing the tracks and had plenty of time to cross over and that he reached the center of the team track just about the time the cars were cut off back near the depot crossing, that Johns suddenly turned north in the center of the team track. The flagman Hicks testified that he immediately started running toward Johns, waving his arms and

yelling to attract Johns' attention, that he did everything he could after the peril of Johns was discovered. As has been previously pointed out, the foregoing testimony is not only undisputed, but is borne out by the testimony of two witnesses for the plaintiff who saw the deceased struck, namely; Floyd Dees and Elmo Grace. There are only two crossings over the tracks of the defendant at this point in the City of Evergreen. The brakeman Bethea was guarding one crossing and the flagman Hicks was guarding the other. These were all the agents of the defendant who were present and both crossings were being protected. It would certainly be unreasonable to say that it was the duty of the defendant to employ guards sufficient to police its tracks to prevent trespassers from walking up and down the same. Union Railway Co. v. Williams, 6 Cir., 187 F.2d 489.

We have already referred to the case of Watts v. Atlantic Coast Line R. Co., 256 Ala. 352, 54 So.2d 601, 605. In that case the plaintiff was injured while walking longitudinally along the tracks at a place in the City of Talladega, where many persons were accustomed to walk. In that case, citing previous authorities, this court said:

"Notoriety and duration of the public use are important only as tending to charge the company's servants with knowledge of conditions in the absence of direct proof of their actual knowledge. Southern Ry. Co. v. Stewart, supra (179 Ala. 304, 60 So. 927). But such evidence of the use of the right of way as a passageway does not raise any conflict in the evidence so as to prevent the giving of the affirmative charge for the defendant. Callaway v. Griffin, 245 Ala. 598, 18 So.2d 547. Plaintiff's right of recovery must be tested not by the duty owed to the general public under the evidence, but by the duty owed to plaintiff under the particular conditions shown by the evidence. Southern Ry. Co. v. Stewart, supra; Callaway v. Griffin, supra."

In the case of Louisville & Nashville Railroad Co. v. Sunday, 248 Ala. 597, 28 So.2d 796, 798, an engine and tender were being backed along the track of the railroad in the Town of Flomaton. There was no person on the back of the tender to keep a lookout. The deceased was crossing the several tracks of the defendant at a regular crossing. Neither the engineer or the fireman ever saw the deceased until she was struck and killed. In holding that the general charge as to the wilful and wanton count should have been given, this court said:

"There was an absence of evidence showing or tending to show that any of the defendant's agents or servants were guilty of willful or wanton wrong. Louisville & Nashville R. Co. v. Porter, 196 Ala. 17, 71 So. 334; Atlantic Coast Line R. Co. v. Brackin, supra (248 Ala. 459, 28 So.2d 193); Central of Georgia Ry. Co. v. Bates, 225 Ala. 519, 144 So. 9; Central of Georgia Ry. Co. v. Corbitt, 218 Ala. 410, 118 So. 755. The court, therefore, erred in refusing defendant's requested written charge three."

In the Sunday case, supra, the deceased was not a trespasser. She was walking across the tracks at a public crossing, which was regularly used. There was no lookout at said crossing and no lookout on the back of the tender. Yet this court held that there was no evidence tending to support the charge of wilful or wanton wrong. In the case at bar the deceased was a trespasser. There were guards at each public crossing in the City of Evergreen. Just as in the Sunday case, the engineer and fireman did not see the deceased. It certainly follows that if there was no evidence to support a charge of wilful and wanton injury in the Sunday case, there is none in the present case. See also Saginaw Lime & Lumber Co. v. Hale, 202 Ala. 513, 81 So. 15; Louisville & Nashville R. Co. v. Porter, 196 Ala. 17, 71 So. 334.

The appellee relies upon the case of Alabama Great Southern Ry. Co. v. Guest, as Adm'r, 136 Ala. 348, 34 So. 968; Id., 144 Ala. 373, 39 So. 654. In the case here referred to two cars and a caboose had been uncoupled and allowed to roll under

450

their own momentum but with a brakeman stationed thereon. Tendencies of the evidence, however, in that case showed that the brakeman was looking backwards toward town and did not put his brake up until after the cars had run over deceased and further that the brake was defective and did not hold.

The appellee cites the case of Louisville & Nashville R. Co. v. Williams, 183 Ala. 138, 62 So. 679, Ann.Cas.1915D, 483, which is a case where a car was shunted on to a side track which track curved very sharply and ran between tall stacks of lumber which came almost to the rails, making a view of the oncoming cars impossible. Furthermore the cars were shunted on to a private track of the Marbury Lumber Company and was used only by permission of the Marbury Lumber Company and which track was also used as a passage way for the employees of the lumber company.

In the case at bar the undisputed proof shows that the tracks were straight and there was absolutely nothing to prevent an open view for a long distance both ways from the scene of the accident. The switching operations were done on tracks which were owned and used solely by the defendant, tracks upon which all of the Louisville & Nashville trains which operate between Montgomery and Mobile run and at a point where the deceased knew that switching was done daily. Furthermore, instead of being a licensee as in the Williams case, the deceased in the case at bar was a trespasser. The railroad company in the Williams case was using the side track merely by sufferance. In the present case it was operating on its own property. The practice of kicking cars was considered in the Williams case and it was pointed out that it was proper for the plaintiff to show that no one came or was sent in advance of or at the front of the cars on this occasion and that it was not customary to kick the cars in without warning or without some one stationed at the front end to give warning. The conductor's omission was found in the failure to send a flagman ahead of the train to warn the employees of the approach of the cars or to station a lookout on the foremost car for that purpose. This was in view of the estimated speed of the cars and the obstructions to those crossing the tracks and the impossibility of hearing the noise of approaching cars while the mills were in operation, conditions inherently dangerous.

As we have shown, there was no proof of any noise to distract the deceased in the case at bar. He had a full and open view of the switching operations. The brakeman was at the Depot Crossing and the flagman was at the Rural Street Crossing. The brakeman signalled the engineer to back up only after he had looked and had seen the track was clear. The flagman did all that he could when he discovered the peril of Johns. There was no proof of a dangerous rate of speed—the speed that is reprehensible is a dangerous rate of speed under the circumstances. Louisville & Nashville R. Co. v. Williams, supra. The deceased was a trespasser upon the tracks of the defendant and no duty was owed him by reason of § 173, Title 48, Code of 1940. Robertson v. Southern Ry. Co., 224 Ala. 640, 141 So. 559. While we have considered the operation of kicking switches only as it applies to this case, we note that this court has said in effect that the practice of kicking switches seems to be in general use by well regulated railroads. Williams v. South & North A. R. Co., 91 Ala. 635, 9 So. 77. The undisputed proof shows that the kicking operation used in the present case was the regular and usual procedure which was used in placing cars on the team track.

We do not consider that there was evidence to support the charge of wilful or wanton wrong set out in counts 6, 7 and 8 and the general charge which was requested separately as to each of these counts should have been given.

We think that enough has been said to show that the court committed error in the trial of the case in the court below and that the case should be reversed and remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.